*Clifford Cain, et al. v. Midland Funding, LLC*, No. 38, September Term, 2020; *Tasha Gambrell v. Midland Funding, LLC*, No. 39, September Term, 2020, Opinion by Booth, J.

**COURTS & JUDICIAL PROCEEDINGS § 5-101 – STATUTES OF LIMITATION – GENERAL APPLICATION.** Maryland's general three-year statute of limitations under Courts & Judicial Proceedings ("CJ") § 5-101 applies to claims filed by a judgment debtor against a judgment creditor for unjust enrichment and money damages under the Maryland Consumer Protection Act ("MCPA") and the Maryland Consumer Debt Collection Act ("MCDCA") related to collection activities arising from the entry of a judgment at a time when the judgment creditor was not a licensed collection agency.

**STATUTE OF LIMITATIONS – ACCRUAL – CONTINUING HARM DOCTRINE.** The Court of Appeals declined to apply the continuing harm doctrine to extend the accrual period for claims for unjust enrichment and statutory money damages related to a judgment creditor's collection activities, where the wrongful conduct forming the basis of the Petitioners' claims was the debt collector's licensure status at the time the judgment was entered, and where the collection activities occurred after the debt collector obtained its license.

**STATUTES OF LIMITATION – TOLLING – CLASS ACTION TOLLING OF SUCCESSIVE CLASS ACTIONS.** The Court of Appeals declined to expand the Maryland class action tolling rule to successive class actions, and instead adopted the reasoning and logic of the Supreme Court in *China Agritech, Inc. v. Resh*, ___ U.S. ___, 138 S. Ct. 1800 (2018).

**STATUTES OF LIMITATION – TOLLING – CROSS-JURISDICTIONAL CLASS ACTION TOLLING.** Maryland recognizes *American Pipe* class action tolling for absent members of putative class actions filed in other state and federal courts. The same factors that we articulated in *Christensen* for intra-jurisdictional tolling also apply to cross-jurisdictional class action tolling. Specifically, in order for the plaintiff to claim the benefit of class action tolling in a later-filed individual claim, the plaintiff must show that the class action complaint: (1) notified the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs; and (2) the individual suit must concern the same evidence, memories, and witnesses as the subject matter of the original class action suit. Cross-jurisdictional class action tolling ends when there is a clear dismissal of a putative class action, including a dismissal for *forum non conveniens*, or a denial of class action for any reason.

**CIVIL PROCEDURE – APPELLATE JURISDICTION – JURISDICTION OVER A FINAL, APPEALABLE ORDER.** The circuit court's orders in *Cain*, which entered summary judgment and a declaratory judgment, constituted a final judgment under the procedural posture of this case. The orders completely adjudicated all claims between the parties at the time that the judgment was entered.

Circuit Court for Baltimore City
Case No.: 24-C-13-004869

Circuit Court for Anne Arundel County
Case No.: C-02-CV-15-002988

Argued: March 4, 2021

IN THE COURT OF APPEALS

OF MARYLAND

Nos. 38 & 39

September Term, 2020

CLIFFORD CAIN, et al.

v.

MIDLAND FUNDING, LLC

TASHA GAMBRELL

v.

MIDLAND FUNDING, LLC

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

Opinion by Booth, J.
McDonald, J., dissents in part.

Filed: August 4, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In the instant cases, we must decide the applicable statute of limitations for claims filed by consumer debtors against a consumer debt buyer, Midland Funding, LLC ("Midland"), alleging improper debt collection activities in connection with money judgments that Midland obtained against the plaintiffs at a time when Midland was not licensed as a collection agency under Maryland law.

These matters originated as two separate putative class action cases that were filed against Midland in Maryland circuit courts. Petitioner Clifford Cain, Jr. filed a putative class action against Midland in the Circuit Court for Baltimore City on July 30, 2013. Petitioner Tasha Gambrell filed a putative class action against Midland in the Circuit Court for Anne Arundel County on September 28, 2015. In both cases, Petitioners allege that Midland obtained judgments against the named plaintiffs and similarly situated members of the putative classes for consumer debts during a time period when Midland did not have a collection agency license under the Maryland Collection Agency Licensing Act ("MCALA").[1] Both putative class actions included counts for declaratory judgment (seeking a declaration that the judgments obtained by Midland were void), injunctive relief preventing Midland from collecting on the judgments in the future, and money damages arising from claims for unjust enrichment and violations of the Maryland Consumer Debt Collection Act ("MCDCA")[2] and the Maryland Consumer Protection Act ("MCPA").[3] In

---

[1] Maryland Code, Business Regulation Article ("BR") §§ 7-101 through 7-502.

[2] Maryland Code, Commercial Law Article ("CL") §§ 14-201 through 14-204.

[3] CL §§ 13-101 through 13-501.

both cases, the circuit courts resolved the cases by motion. In Mr. Cain's case, the circuit court entered an order granting summary judgment to each party in part, and a separate declaratory judgment declaring the rights of the parties. In Ms. Gambrell's case, the circuit court granted Midland's motion to dismiss.

Both cases were appealed to the Court of Special Appeals. That court issued an unreported opinion in each case. With respect to Mr. Cain's case, the Court of Special Appeals determined that it had jurisdiction to consider Mr. Cain's appeal, concluding that the circuit court's summary judgment order and declaratory judgment constituted a final judgment. Aside from that procedural issue, which was unique to Mr. Cain's case, the Court of Special Appeals resolved Mr. Cain's and Ms. Gambrell's claims in the same manner. In each instance, the intermediate appellate court held that our decision in *LVNV Funding LLC v. Finch*, 463 Md. 586 (2019) ("*Finch III*") resolved the Petitioners' declaratory judgment counts and that under *Finch III*, the judgments obtained when Midland was unlicensed were not void. The court also held that, since Petitioners' judgments had been satisfied, they were not entitled to injunctive relief because Midland was no longer collecting on them. With respect to the remaining claims seeking restitution under an unjust enrichment theory and money damages for the statutory claims, the Court of Special Appeals held that the claims were barred by the general three-year statute of limitations codified at Maryland Code, Courts and Judicial Proceedings Article ("CJ") § 5-101. The court rejected Petitioners' argument that the claims constituted "actions on a judgment" and were therefore subject to a 12-year statute of limitations applicable to specialties actions under CJ § 5-102(a)(3). The court similarly rejected Petitioners'

2

assertion that the continuing harm doctrine applied to change the accrual date for their unjust enrichment claims. Finally, the court rejected Petitioners' argument that the statute of limitations was tolled under the class action tolling doctrine based upon Mr. Cain's earlier participation as a putative class member in a federal class action case, and in Ms. Gambrell's case, based upon two would-be class action cases pending against Midland in Maryland state courts. We granted Mr. Cain's and Ms. Gambrell's petitions for writ of *certiorari*.[4] Because the cases involve the same questions of law, we issue one opinion to answer the following questions, which we have rephrased for clarity:

1. Whether Petitioners' claims for unjust enrichment and money damages under the MCPA and MCDCA are subject to the three-year general statute of limitations under CJ § 5-101?

2. Whether the continuing harm doctrine applies to change the accrual date for Petitioners' claims for unjust enrichment and statutory money

---

[4] The questions presented in Mr. Cain's petition for writ of *certiorari* are:

1. Whether the statute of limitations for actions on judgments under [CJ] § 5-102(a)(3) applied to both parties to the judgment?

2. If the Petitioner's claims here are not governed by [CJ] § 5-102(a)(3), do claims under Maryland's consumer protection laws concerning the continuing unfair, deceptive and wrongful conduct accrue each time a damage occurs or a[n] ill-gotten benefit is realized by the wrongdoer?

3. Whether the Federal tolling under 28 [U.S.C.] § 1367(d) or class action tolling from a prior Federal action applies to a subsequent Maryland state action?

4. Whether the [Court of Special Appeals] had jurisdiction to review the Circuit Court's non-final orders?

Ms. Gambrell's petition for writ of *certiorari* presented the identical questions to Mr. Cain's questions 1 and 2.

3

damages because Midland garnished Petitioners' wages over a period of time after it obtained the judgment?

3. Whether the statute of limitations period on Mr. Cain's individual claims was tolled under Maryland's class action tolling doctrine?

4. Whether 28 U.S.C. § 1367(d) tolled the statute of limitations on Mr. Cain's claims asserted in his state court class action based upon his earlier participation as a putative class member of a federal class action?

5. Whether a final judgment was entered by the circuit court in Mr. Cain's action that was therefore reviewable by the Court of Special Appeals?

We answer yes to questions one, three and five, and no to question two. Given our holding that Maryland recognizes cross-jurisdictional class action tolling, we determine that it is unnecessary to answer question four. In Ms. Gambrell's case, we affirm the judgment entered by the Court of Special Appeals in both cases in its entirety. In Mr. Cain's case, pertaining to Mr. Cain's individual claims, we affirm the judgment of the Court of Special Appeals in part, and reverse it in part.

Before we get into the weeds of the instant cases, we start with some background and history for context. This is not the first time that we have addressed debt collection activities by consumer debt purchasers like Midland. It is useful to give an overview of the licensing laws that apply to the collection activities that spawned several class action cases in both the United States District Court for the District of Maryland and our state circuit courts.

4

# I.

## Background

### A.    *Debt-Buying Industry—Unlicensed Collection Activities and Legislative Amendments to Regulate Industry*

In *Finch III*,[5] we described the emergence of the consumer debt-buying business model that was developed in the late 1980s, which has become commonplace in the debt collection industry.    Under this new business format, creditors (such as credit card companies) sell consumer debt accounts that are in default to bulk purchasers for pennies on the dollar, thereby transferring the expense and risk of consumer debt collection efforts to the consumer debt purchaser.

In Maryland, a debt collection agency is required to be licensed.  *See* the MCALA, Md. Code, Business Regulation Article ("BR") § 7-301(a) ("a person must have a license whenever the person does business as a collection agency in the State[]").  The MCALA was enacted by the General Assembly in 1977.[6]   From its enactment until some amendments in 2007, the license requirements focused on persons who were "directly or

---

[5] In order to distinguish between the various decisions related to the *Finch* litigation, we refer to the various cases as follows: *Finch v. LVNV Funding, LLC*, 212 Md. App. 748 *cert. denied*, 435 Md. 266 (2013) ("*Finch I*"); *LVNV Funding v. Finch*, No. 1075, 2017 WL 6388959 (Md. Ct. Spec. App. 2017) ("*Finch II*"), *vacated*, *LVNV Funding LLC v. Finch*, 463 Md. 586 (2019) ("*Finch III*").

[6] We summarized the legislative history of the MCALA in *Blackstone v. Sharma*, 461 Md. 87 (2018).

indirectly in the business of collecting for, or soliciting from another, a consumer claim." *Finch III*, 463 Md. at 603 (emphasis omitted).[7]

By 2007, it was apparent to the state regulators, and ultimately, the General Assembly, that the new business model did not fit within the existing definition of "collection agency," and debt bulk purchasers were engaging in debt collection activities—filing civil lawsuits, obtaining judgments, and engaging in post-judgment collection activities—in the State without a license. *Id.* at 603–04. It was estimated that, by 2007, there were approximately 40 debt purchasers that were engaging in debt collection activities in Maryland without a license.[8] To close this loophole, at the urging of the Commissioner of Financial Regulation, the General Assembly expanded the definition of "collection agency" to include a person "who engages directly or indirectly in the business of . . . collecting a consumer claim the person owns, if the claim was in default when the person acquired it[.]" BR § 7-101(d)(1)(ii) (the "2007 amendment"). The 2007 amendment took effect on October 1, 2007. From that date, bulk purchasers of consumer debts "who engaged directly or indirectly in the business of collecting consumer debt that they owned and that was in default when they acquired it" were required to be licensed. *Finch III*, 463 Md. at 604.

---

[7] In *Finch III*, we pointed out that the 2006 version of the MCALA defined "collection agency" in relevant part as a person who "engages directly or indirectly in the business of collecting for, or soliciting from *another*, a consumer claim." 463 Md. at 603 (emphasis in original).

[8] *See* Dep't Legis. Servs., *Fiscal and Policy Note, House Bill 1324*, at 2 (2007) ("The department estimates that the bill would make 40 debt purchasers subject to State regulation. Debt purchasers are not currently subject to regulation, as they purchase the debt directly from the creditor and are generally compensated as a percentage of their recovery.").

Despite the legislative change that brought bulk consumer debt purchasers within the statutory umbrella of the state licensing scheme, some debt purchasers professed confusion concerning whether they were required to be licensed in certain instances. This confusion purportedly arose from their reliance on a letter issued in June 2007 by an employee of the Department of Labor, Licensing and Regulation ("DLLR") on behalf of the Chair of the Collection Agency Licensing Board. These debt purchasers relied on the June 2007 letter as support for the proposition that they were not required to be licensed as a collection agency, provided that the collections were handled on their behalf by an attorney who was licensed as a Maryland collection agency.[9] To address the confusion, in May, 2010, the Collection Agency Licensing Board ("Board" or "Licensing Board") issued an advisory notice "clarify[ing] that it has been its consistent position that a consumer debt purchaser that collects consumer claims through civil litigation is a 'collection agency' under Maryland law and required to be licensed as such[.]" (Some capitalization omitted). Notwithstanding the Board's position on the need for licensing, the Board acknowledged the "claims of confusion" arising from the June 2007 letter by some consumer debt purchasers in deciding not to become licensed. In order to facilitate the prompt licensing

---

[9] We summarized the circumstances surrounding the letter, and its contents in *Finch III*. We noted that the June 2007 letter was written by Kelly Mack, an employee of the Department of Labor, Licensing and Regulation, purportedly on behalf of the Chair of the Collection Agency Licensing Board. *Finch III*, 463 Md. 586, 604 n.9. In *Finch III*, we rejected the debt buyer's reliance on this letter as being inconsistent with both the plain language of the MCALA, and the affidavits submitted by the Commissioner of Financial Regulation, attesting to the fact that the DLLR and Collection Agency Licensing Board had consistently taken the position that consumer debt purchasers who collect debts through civil litigation are "collection agencies" that are subject to the licensing requirements of the MCALA. *Id.* at 604 n.9.

of the unlicensed consumer debt purchasers, the advisory notice stated that the Board would not preclude an unlicensed consumer debt purchaser from obtaining a license where, prior to September 1, 2010, it engaged in civil litigation to collect a consumer debt, provided that: (1) the consumer debt purchaser was represented in the action by an attorney who was licensed as a Maryland collection agency; and (2) the consumer debt purchaser applied for a license on or before August 31, 2010. The Board further proclaimed that it would not bring an action against a consumer debt purchaser solely for its non-licensed status provided it fit within the criteria set forth above.

After October 1, 2007, the effective date of the 2007 amendment, a multitude of lawsuits were filed in both state and federal courts seeking to challenge judgments obtained by debt purchasers who were not licensed as a collection agency at the time they obtained the judgments, as well as post-judgment collection efforts undertaken by the debt purchasers. We discuss the history of one such legal saga—"the *Finch* cases"—below. We shall explain the *Finch* litigation in some detail because the *Finch* cases were decided during the pendency of the instant cases, and the lower courts relied upon the various *Finch* holdings in their rulings below. Moreover, as the Court of Special Appeals correctly noted, our holding in *Finch III* resolves some of the claims made by the Petitioners here.

### B. The Finch Cases

*Finch III* originated as a class action lawsuit filed in the Circuit Court for Baltimore City against LVNV Funding, LLC ("LVNV") that resulted in money judgments in favor of two named plaintiffs, as well as a separate money judgment against LVNV in the amount of $25 million in favor of the class. LVNV was a debt purchaser that began its debt collection

8

activity upon its founding in 2005 but did not obtain a collection agency license until 2010. During this period, LVNV obtained individual judgments against the named plaintiffs, as well as members of the plaintiff class, and engaged in post-judgment collection activity. The plaintiffs alleged that LVNV violated three Maryland consumer protection statutes that govern debt collection activity—the MCALA (BR §§ 7-101 through 7-502); the MCDCA (CL §§ 14-201 through 14-204); and the MCPA (CL §§ 13-101 through 13-501). Like the Petitioners in this case, the plaintiffs in *Finch* sought, among other things, a declaration that the judgments entered against them in the state District Court in favor of LVNV when it was not licensed as a collection agency were void. *Id.* at 598. On LVNV's motion, the circuit court dismissed the complaint on the ground that it amounted to an impermissible collateral attack on enrolled District Court judgments. *Id.*

In a reported opinion, the Court of Special Appeals reversed the circuit court's judgment, holding that the judgments obtained by LVNV when it was not licensed as a collection agency were void, and not merely voidable, and could be collaterally attacked at any time and in any court. *See Finch I*, 212 Md. App. 748. Upon that ruling, and the denial of *certiorari* by this Court, the case returned to the circuit court for further proceedings. On remand, the case was submitted to a jury on the plaintiffs' claims of unjust enrichment and whether LVNV violated the MCDCA. The jury awarded damages to the named plaintiffs and the class, which was ultimately entered as a judgment in the amount of $25 million. After the Court of Special Appeals affirmed the judgment in an unreported opinion ("*Finch II*"), LVNV filed a petition for writ of *certiorari*, which we granted to consider three issues: (1) whether the MCALA was intended to apply to entities such as

9

LVNV that "passively own" consumer debt but retain licensed collection agencies to collect it; (2) whether a judgment in favor of an unlicensed agency is void; and (3) whether the lower courts erred in finding a private right of action in the MCALA or MCDCA.

As to the issue of whether the MCALA applied to LVNV, after examining the plain language of the 2007 amendment, as well as the legislative history, we rejected LVNV's argument that the amendment did not apply where the unlicensed agency retains a law firm licensed as a collection agency to collect the debt. We held that, from the date that the 2007 amendment took effect, "debt buyers who engaged directly or indirectly in the business of collecting consumer debt that they owned and that was in default when they acquired it needed to be licensed.[]" *Finch III*, 463 Md. at 604. Accordingly, we held that LVNV's collection activity from October 1, 2007 until it obtained a license in February 2010 was unlawful under the MCALA, MCDCA, and MCPA. *Id.* at 606.

However, we disagreed with the Court of Special Appeals' holding in *Finch I* and *Finch II*, that a judgment obtained by an unlicensed collection agency is void. In rejecting this holding, we explained that "[j]udgments, by and large, are meant to be final." *Id.* at 607. Repeating the words expressed by this Court 143 years ago, which have been repeated several times since, we pointed out that

> [i]t is most desirable of course that there should be an end to litigation, and a judgment is presumed to be a settlement of all matters in dispute in that particular case; and once entered, parties are no longer under the necessity of preserving the evidences upon which their claims rested. By it new rights are acquired, and if stricken out other claims may intervene, and the plaintiff may not only lose his lien, but in many cases the entire debt.

*Id.* (quoting *Abell v. Simon*, 49 Md. 318, 324 (1878)) (additional citations omitted). We explained that, "[i]n furtherance of that principle, the ability to challenge a civil judgment, other than by appeal, is limited, even in the court that entered it. The court that rendered the judgment has discretionary revisory power over it for only 30 days." *Id.* We pointed out that, under Maryland Rules 2-535 and 3-535, the judgment becomes "enrolled" on the 30th day following its entry, "and after that time, the court may revise it only upon a finding of fraud, jurisdictional mistake, or irregularity, which are narrowly construed." *Id.* at 607–08 (citations omitted).

In addition to principles of finality, we also observed that our jurisprudence dating back to 1824 distinguished "between judgments that were merely voidable because of irregularities in the proceeding that produced them and those that were absolutely void *ab initio*." *Id.* at 608 (citing *Barney v. Patterson*, 6 H. & J. 182, 204 (1824)). We stated that

> [c]ollateral attacks, whether in the court that entered the judgment or in any other court, are even more severely limited and are permitted only when the court that rendered the judgment had no *jurisdiction* to do so. Indeed, there are few principles of law that are so firmly and consistently entrenched in our jurisprudence, and for good reason.

*Id.* (emphasis in original). We also explained that our holding was not "a matter of blind adherence to an outmoded judicial policy[,]" but in recognition that "[e]nrolled judgments create important vested rights that not just the parties, but the entire public, have a right to rely upon." *Id.* at 611. Because the District Court "clearly had fundamental jurisdiction over the collection actions filed by LVNV, notwithstanding that LVNV had no legal authority to file them," we held that the two lower courts erred in declaring them void. *Id.*

11

Although we determined that the judgments obtained when LVNV was unlicensed were not void or otherwise subject to collateral attack, we nonetheless held that the MCALA establishes a private remedy for the recovery of "any damages" arising from a violation of its statutory provisions, including for emotional distress. *Id.* at 612. Accordingly, we remanded the case for further proceedings with respect to damages. We stated that "[a]lthough the District Court judgments may not be collaterally attacked, BR § 7-401, read in conjunction with § 7-101(c), would permit declaratory and injunctive relief precluding LVNV from taking any action to enforce those judgments and for *any* damages incurred by the plaintiffs as the result of LVNV's collection efforts." *Id.* (emphasis in original).

To summarize our holdings in *Finch III*, we held that:

- As of October 1, 2007—the date that the 2007 amendment took effect—debt buyers were required to be licensed before engaging in efforts to collect consumer debt.

- Enrolled judgments obtained by an unlicensed debt buyer are not void or subject to collateral attack on any ground other than the fundamental jurisdiction of the court that entered the judgment to render it.

- Although an enrolled judgment obtained by an unlicensed debt buyer is not void, a judgment debtor may still have a cause of action under the Maryland consumer protection statutes governing debt collection (MCALA, MCDCA and MCPA) for declaratory and injunctive relief precluding the debt buyer who obtained the judgment while unlicensed, from enforcing those judgments and for any damages incurred by the plaintiff as a result of the collection efforts.

12

In *Finch III*, we did not consider the issue presented in this case—the applicable statute of limitations that applies to a plaintiff's claims for unjust enrichment and statutory monetary damages arising from a debt buyer's collection activities.[10] That issue is presented in the instant case.

### C. *Midland's Licensing Status*

Like LVNV in the *Finch* saga, Midland is also an out-of-state debt-buyer[11] that obtained judgments and pursued debt collection actions at a time when it was not licensed in Maryland as a debt collector. The Board entered an administrative order on September 16, 2009 requiring Midland and a number of its affiliates to cease and desist collection activities in Maryland. On December 17, 2009, Midland, several of its affiliates, and the Board entered into a settlement agreement, whereby Midland agreed to stay all of its active collection-related actions and not to file any new collection-related actions in Maryland until it was issued a license by the Licensing Board. The agreement also provided that, after it obtained the proper license, Midland could "file appropriate motions in the

---

[10] In *Finch III*, the respondents filed a cross-petition asking the Court to determine whether the subclass members' claims were barred by the statute of limitations. The purported subclass consisted of all persons who had paid amounts pursuant to the judgments. Given our remand for a consideration of declaratory and injunctive relief that might preclude LVNV from taking prospective action to enforce the judgments, and for any statutory damages arising out of LVNV's collection efforts, we did not reach the statute of limitations issue, stating that "[b]ecause of this remand for further proceedings with respect to damages, we need not address the issues raised in respondent's cross-petition. If raised again in the Circuit Court, the context may be different." 463 Md. at 612.

[11] Midland is a limited liability company that was organized in Delaware. Its business is to purchase bulk portfolios of past-due consumer debt from lenders for purposes of collection.

13

Maryland state courts or take other appropriate actions in order to have the voluntary stay . . . lifted by the courts." (Capitalization omitted). Midland also agreed to pay a penalty in the sum of $998,000. On January 15, 2010, the Licensing Board issued Midland a collection agency license.

Midland's unlicensed debt collection activity included the collection litigation against Mr. Cain and Ms. Gambrell that resulted in judgments being entered against them, and which ultimately gave rise to the putative class actions filed by them in these cases. We describe the nature of the debt collection activity and the resulting putative class action litigation below.

## II.

## Procedural History

### A.      *Mr. Cain's Litigation with Midland*

#### 1.      *Midland's 2009 Collection Action Against Mr. Cain*

The genesis of Mr. Cain's dispute with Midland started with a debt collection action that was filed against him in 2009. Midland purchased a portfolio of past-due loans from Citibank in January 2009. One of those loans included an unpaid balance on a credit card account owed by Mr. Cain. On March 30, 2009, Midland filed a collection action against Mr. Cain in the District Court of Maryland, sitting in Baltimore City. Mr. Cain was served with the complaint and filed a notice of intention to defend in which he requested a postponement of the trial date so that he could obtain counsel. When the trial was held on August 19, 2009, Mr. Cain did not appear. The District Court entered judgment by affidavit in Midland's favor in the amount of $4,520.54, plus costs. On September 25, 2009,

14

Midland received a partial payment of $300 toward the judgment. On October 29, 2010, Midland filed a request for writ of garnishment to collect the remaining balance. Whether through garnishment or other means, the balance due was paid, and Midland filed an order of satisfaction on August 8, 2012. When Midland obtained the judgment, and when Mr. Cain made his first payment, Midland was not licensed as a debt-collection agency under Maryland law. Midland's attempts to collect the judgment through its garnishment efforts occurred after it was licensed as a collection agency.

### 2. Federal Class Action Litigation - Johnson v. Midland

Midland's attempts to collect consumer debts without a license spawned class action litigation. On September 10, 2009, a federal civil action was filed against Midland in the United States District Court for the District of Maryland. *See Johnson v. Midland Funding, LLC*, D. Md. Civil. No. 09-2391. Mr. Cain was a putative class member of the *Johnson* plaintiffs' proposed class, which was defined as "all natural persons who reside in Maryland and who have been the subject of consumer debt collection efforts by Midland within three years immediately preceding the filing of this class action that included the filing of an action before a Court of the State of Maryland." In June 2010, the parties agreed to a settlement of the *Johnson* case. As part of the settlement, the plaintiff class was narrowed to exclude persons—like Mr. Cain—against whom Midland had obtained a judgment. The federal district court approved the settlement on March 10, 2011. The claims that were not included in the settlement were dismissed with prejudice.

15

### 3. The Present Action

Mr. Cain filed the present action in the Circuit Court for Baltimore City on July 30, 2013. The complaint alleges that Midland improperly sought to collect debts as an unlicensed collection agency and as a result, the judgments obtained by Midland were void.[12] Rather than filing an individual action, Mr. Cain filed the case as a putative class action, with the proposed class consisting of all persons sued by Midland in Maryland courts from October 30, 2007 to October 14, 2010, and against whom Midland had obtained judgments. Mr. Cain, on his own behalf, and on behalf of members of the putative class, brought three counts seeking declaratory and injunctive relief (counts I, II and III), including: a declaration that Midland was not entitled to interest, attorney's fees or court costs on his debt or the debts of the plaintiff class members because it was acting as an unlicensed debt collection agency; a declaration that Midland's judgment against Mr. Cain (as well as any other judgments obtained against members of the putative class) was void; injunctive relief to enjoin Midland from engaging in any further collection activities on judgments obtained while it was unlicensed; and money damages based on theories of unjust enrichment (count IV) and Midland's statutory violations of the MCALA, MCDCA and MCPA (count V).

In June 2017,[13] Midland filed a motion to dismiss, or in the alternative, for summary judgment. Although Midland presented a number of contentions, only one is pertinent to

---

[12] Given our holding in *Finch III*, this claim has been adversely decided against Petitioners.

[13] Between the filing of the complaint and Midland's filing of its motion to dismiss or for summary judgment, the case took a procedural detour to this Court. As noted above, Midland's original claim against Mr. Cain was based upon his failure to make payments

16

the present case—specifically, that all counts are time-barred by the applicable statute of limitations. Mr. Cain filed an opposition to Midland's motion, as well as his own motion for partial summary judgment. Relying upon *Finch I*, 212 Md. App. 748, Mr. Cain argued that he was entitled to summary judgment as a matter of law on his request for declaratory judgment, asserting that the judgment was void because Midland was not licensed in Maryland when it obtained its judgment against him. Mr. Cain also argued that his additional claims were not time-barred because the statute of limitations was tolled under the class action tolling doctrine recognized by the Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and adopted by this Court in *Philip Morris USA, Inc. v. Christensen*, 394 Md. 227 (2006), *abrogated on other grounds*, *Mummert v. Alizadeh*, 435 Md. 207 (2013).

In July 2017, Mr. Cain filed a motion to compel discovery, asserting that Midland had supplied unresponsive answers to interrogatories, which caused him prejudice. He requested that the court order Midland to provide complete responses to any outstanding discovery. Mr. Cain also sent a letter to the court requesting that a hearing be scheduled on his motion for class certification, which Midland opposed.

---

on an overdue credit card balance. Midland asserted that it was entitled to invoke a mandatory arbitration clause contained in the credit card agreement between Mr. Cain and Citibank. The circuit court and Court of Special Appeals agreed with Midland. We did not. *See Cain v. Midland Funding*, 452 Md. 141, 163 (2017) (holding that Midland waived its right to arbitrate the current claim when it chose to litigate the collection action that it initiated against Mr. Cain in 2009). After holding that the mandatory arbitration provisions did not apply, we remanded the case to the circuit court for further proceedings.

The circuit court held a hearing on September 13, 2017 on Midland's motion and Mr. Cain's motion for partial summary judgment. On September 21, 2017, the court issued a memorandum opinion and order that granted each motion in part and denied each in part. As a result of the memorandum opinion and order, all of Mr. Cain's individual claims contained in the amended complaint were adjudicated. *First*, the court determined that, based upon the Court of Special Appeals' decision in *Finch I*, the judgment that Midland had obtained against Mr. Cain in 2009 was void, and he was entitled to a declaratory judgment vacating that judgment. The court further determined that neither laches nor the statute of limitations applied to that claim. *Second*, the court determined that Mr. Cain's claim for unjust enrichment was barred by the three-year statute of limitations set forth in CJ § 5-101 and rejected Mr. Cain's argument that such claims were tolled under a theory of cross-jurisdictional class action tolling. *Third*, the court concluded that, because the judgment against Mr. Cain had been paid and an order of satisfaction had been filed, there was no basis to grant the injunctive relief sought by him.

Consistent with its September 21 opinion and order, the court entered a separate declaratory judgment in favor of Mr. Cain in the principal amount of $4,520.54 plus $60 in costs and post-judgment interest. The court further ordered that the original judgment entered in favor of Midland and against Mr. Cain in the District Court be vacated. The order was docketed the following day, on September 22, 2017. The clerk indexed the judgment, entering a $4,520.54 "money judgment" against Midland on September 29, 2017.

We pause here for a moment to discuss the purported claims that another individual, Cassandra Murray, attempted to raise in this proceeding. On September 21—the same date

18

that the court signed the order and declaratory judgment—Mr. Cain filed an amended complaint, which sought to add Cassandra Murray as a second plaintiff.[14]

Midland and Mr. Cain and Ms. Murray filed motions to alter or amend the court's September 21 opinion and order. Mr. Cain and Ms. Murray's motion to alter or amend asserted that the court's opinion and order failed to address: (1) Ms. Murray's claims; (2) the putative class claims; or (3) that the case was to be closed.

The court denied all the parties' motions to alter or amend by an order entered on October 24, 2017. Midland's motion is not relevant to the issues presented here, other than to note that, in denying Midland's motion, the court accepted Mr. Cain's argument that the 12-year limitations period set forth in CJ § 5-102(a)(3) applied to Mr. Cain's statutory claim that Midland's act in obtaining a judgment against him while it was unlicensed was void. Addressing Ms. Murray's claims, the court pointed out that the amended complaint was filed on September 21—the same date that the court issued its memorandum opinion and order. The court further noted that Mr. Cain moved for summary judgment "individually and on behalf of a class and subclass of similar persons" on July 7, 2017— several months before Ms. Murray attempted to join the case as a plaintiff. The court also

---

[14] Ms. Murray, through Mr. Cain's counsel, previously filed a class action lawsuit against Midland in the Circuit Court for Anne Arundel County. The case was later removed to federal court. The federal court decided part of the case against Ms. Murray on the same limitations issue presented in this case, remanded a portion of the case to state court, and certified questions to this Court. *See Murray v. Midland Funding, LLC*, Case No. JKB-15-0532, 2015 WL 4994212 (D. Md. Aug. 19, 2015). Ms. Murray dismissed her remaining federal claims, which eliminated this Court's need to answer the certified question. Ms. Murray ultimately dismissed her state court claims pending in the Circuit Court for Anne Arundel County on August 5, 2017. The amended complaint purporting to add her to this case was filed six weeks later.

stated that Ms. Murray's claims were not argued at the hearing on September 13, and therefore, the "court did not have the opportunity to opine on Ms. Murray's hypothetical claims." Finally, the court stated that it "was not aware that such claims existed until after the [o]rder was issued."

With respect to the plaintiff's motion to certify the class, the court noted that it expressly declined to rule on that motion at the September 13 hearing, and specifically stated at the hearing that the request would be forwarded to the judge assigned to determine class certification. The court noted that, although the clerk inadvertently closed the case after the entry of the memorandum opinion and order, the matter was reopened and consequently, the plaintiff's motion as it pertained to the improper closure of the case was moot.

Midland filed a timely notice of appeal. After a delay pending this Court's decision in *Finch III*, the Court of Special Appeals requested supplemental briefing, followed by oral argument. In an unreported opinion, after determining that the circuit court's summary judgment and declaratory judgment orders constituted a final appealable judgment, the Court of Special Appeals held that Mr. Cain's claims for monetary damages were time-barred; that *Finch III* resolved Mr. Cain's requested declaration that the judgments were void; and that Mr. Cain's claim for injunctive relief had no basis because Midland's judgment against Mr. Cain had been satisfied before Mr. Cain filed this lawsuit. *Midland Funding, LLC v. Cain*, No. 1805, Sept. Term, 2017, 2020 WL 4370888 at *15 (Md. Ct. Spec. App. July 30, 2020). Mr. Cain petitioned for a writ of *certiorari*, which this Court granted.

20

### B.      Ms. Gambrell's Litigation with Midland

#### 1.      Midland's 2008 Collection Action Against Ms. Gambrell

On July 14, 2008, Midland, through counsel, filed a breach of contract action against Ms. Gambrell in the District Court of Maryland, sitting in Montgomery County. Midland's complaint was served on Ms. Gambrell on August 17, 2008. The trial took place on October 8, 2008, and the court entered a judgment against Ms. Gambrell in the amount of $2,420.97, plus $141.68 in prejudgment interest and $60.00 in costs. Ms. Gambrell subsequently made a partial payment in the amount of $251.32 on November 30, 2009.

It is undisputed that Midland did not have a collection agency license when it filed the lawsuit against Ms. Gambrell and obtained the judgment against her. As noted above, as part of the settlement agreement between Midland and the Licensing Board, the Board authorized Midland to collect on pre-licensure judgments after it became licensed. On January 15, 2010, Midland obtained a license. Once it was licensed, and because the judgment against Ms. Gambrell was not satisfied, Midland's attorneys requested a writ of garnishment, which was issued on December 5, 2011. Midland's attorneys requested a second writ, which they signed on September 17, 2012. The writ noted that, as of September 17, 2012, the sum of $2,216.32 had been paid toward Ms. Gambrell's judgment and that the remaining amount due was $437.07. The judgment was fully paid. Ms. Gambrell did not allege, nor do the docket entries reflect, any collection efforts by Midland after 2012.

#### 2.      The Present Action

On September 28, 2015, Ms. Gambrell filed a putative class action against Midland in the Circuit Court for Anne Arundel County. In 2016, she filed an amended complaint,

21

which is the operative complaint. In it, she alleged that Midland's failure to have a debt collection license in 2008 rendered the judgment Midland obtained against her "void and unenforceable." She asserted the following five claims, all based on Midland's licensure status: unjust enrichment (count I); a claim for disgorgement of all funds collected by Midland through its efforts to enforce the judgment while unlicensed in violation of the MCDCA, and the MCPA (count II); a similar claim based on Midland's alleged violations of the MCALA and the common law action of money "had and received" (count III); a declaratory judgment that Midland's judgment against her was void and unenforceable, together with an injunction against Midland's attempts to enforce the judgments in the future (count IV); and declaratory and injunctive relief against Midland's attempting to collect pre- and post-judgment interests and costs (count V). As to each count, Ms. Gambrell also sought class certification to encompass "[t]hose persons sued by Midland in Maryland state courts from October 30, 2007 [against] whom Midland obtained a judgment for an alleged debt, interest or costs, including attorney's fees[.]"[15]

Midland filed a motion to dismiss Ms. Gambrell's amended complaint, arguing, in pertinent part, that all counts are time-barred and fail to state claims upon which relief can be granted, that Ms. Gambrell could not attack a judgment obtained in the District Court in a different county, that Ms. Gambrell's claims are not justiciable, and that its post-licensure collection activities were authorized by the State Licensing Board. Ms. Gambrell filed an opposition to Midland's motion.

---

[15] Ms. Gambrell also sought a subclass certification consisting of "those members of the [c]lass from whom Midland collected . . . any sum on the judgment."

The court held a hearing on Midland's motion, at the conclusion of which the court issued its ruling from the bench. As to Ms. Gambrell's unjust enrichment, statutory and disgorgement claims (counts I, II and III), the court concluded that the Court of Special Appeals' decision in *Jason v. National Loan Recoveries*, 227 Md. App. 516 (2016), controlled and that a three-year statute of limitations applied to those claims. The court determined that those claims accrued "when the defendant filed the collection action against the plaintiff as the defendant's unlicensed status was a matter of public record and [the Licensing Board] had issued an advisory notice requiring collection agents to be licensed two years prior to the commencement of that action," and therefore, that the limitations period had run in 2011. Accordingly, the circuit court dismissed these counts with prejudice. With respect to the declaratory judgment and injunctive relief counts (counts IV and V), the court determined that it lacked authority to issue the declaratory relief and dismissed those counts without prejudice.[16]

Ms. Gambrell noted an appeal to the Court of Special Appeals. After arguments, the case was stayed pending our decision in *Finch III*. After additional briefing and oral argument, the Court of Special Appeals issued an unreported opinion affirming the circuit court's decision. *Gambrell v. Midland Funding, LLC*, No. 1939 Sept. Term, 2016, 2020 WL 4371297 (Md. Ct. Spec. App. July 30, 2020). The intermediate appellate court determined that Ms. Gambrell's claims for money damages (counts I, II and III) were

---

[16] The Circuit Court for Anne Arundel County concluded that if Ms. Gambrell wished to challenge a judgment entered by the District Court, sitting in Montgomery County, she must do so pursuant to that court's power under Maryland Rule 3-535, and, if that fails, she may seek declaratory relief in the Circuit Court for Montgomery County.

barred by the three-year statute of limitations under CJ § 5-101, and that her claims for declaratory and injunctive relief (counts IV and V) were resolved by our decision in *Finch III*. Ms. Gambrell petitioned this Court for a writ of *certiorari*, which we granted.

## III.

### Standard of Review

Under Maryland Rule 2-322(b)(2), a defendant may seek dismissal of a complaint if the complaint "fail[s] to state a claim upon which relief can be granted." "A motion to dismiss is properly granted if the factual allegations in a complaint, if proven, would not provide a legally sufficient basis for the cause of action asserted in the complaint." *Wheeling v. Selene Finance LP,* 473 Md. 356 (2021). Whether a motion to dismiss was properly granted or not is a legal question. This Court reviews legal questions *de novo*, with no deference given to the trial court. *See Lamson v. Montgomery County*, 460 Md. 349, 360 (2018). In doing so, the Court "must assume the truth of all relevant and material facts that are well pleaded and all inferences which can be reasonably drawn from those pleadings." *Barclay v. Castruccio*, 469 Md. 368, 373–74 (2020) (quoting *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 121 (2007)). A motion to dismiss may only be granted where the allegations presented do not state a cause of action. *Id.* at 374.

Regarding Mr. Cain's case, on review of a court's grant of summary judgment, we must first determine whether a genuine dispute of material fact exists. *Koste v. Town of Oxford*, 431 Md. 14, 24–25 (2013). If not, we determine whether the circuit court correctly entered summary judgment as a matter of law. *Id.* at 25. The standard of review of a circuit court's grant of a motion for summary judgment is *de novo*. *Id.*

24

## IV.

## Discussion

As discussed above, the Court of Special Appeals correctly determined that our holding in *Finch III* applies to the Petitioners' claims seeking a declaratory judgment that Midland's judgments against them are void. The Court of Special Appeals also held that the circuit court correctly dismissed the injunctive relief claims because the judgments were paid and orders of satisfaction were filed, and accordingly, there was no basis upon which to grant injunctive relief. The Petitioners did not seek our review of these holdings.

The only issues before us involve whether Petitioners' claims for unjust enrichment and for statutory damages under the MCDCA and the MCPA are time barred, and whether a final appealable judgment was entered in Mr. Cain's case. For the reasons set forth below, we agree with the Court of Special Appeals' conclusion that the blanket three-year statute of limitations applies to such claims. We agree that Ms. Gambrell's claims are time-barred. As set forth herein, we recognize cross-jurisdictional class action tolling with respect to Mr. Cain's individual claims. Based upon the application of class action tolling, we determine that Mr. Cain's claims are not time-barred.

### A.    *Accrual of Claims*

Before we discuss the applicable statute of limitations, we briefly recount the circuit courts' respective determinations concerning the date that Mr. Cain's and Ms. Gambrell's claims for damages accrued. We have said that the question of when an action accrues is one left to judicial determination. *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95 (2000). In Maryland, we apply the "discovery rule" in civil actions in determining

25

when the statute of limitations begins to accrue on a claim. *Poffenberger v. Risser*, 290 Md. 631 (1981). Under the discovery rule, a claim accrues when the plaintiff "knew or reasonably should have known of the wrong." *Id.* at 636.

Although neither party has sought review of the circuit courts' determinations of the respective accrual dates, we briefly discuss the issue given that any limitations period runs from that date. With respect to Mr. Cain's claims, the circuit court concluded that his claims for money damages accrued for limitations purposes when Midland received its first payment on the judgment, which was on September 25, 2009. The Court of Special Appeals affirmed the circuit court's accrual determination, and Mr. Cain did not seek review of this issue.[17] Mr. Cain filed suit on July 30, 2013—more than three years after the claim accrued.

With respect to Ms. Gambrell's claims, the circuit court determined that Ms. Gambrell's claims accrued on July 14, 2008, which is the date Midland filed its collection action against her. The circuit court concluded that Midland's "unlicensed status was a matter of public record and [the Licensing Board] had issued an advisory notice requiring

---

[17] Although Mr. Cain did not seek review of the circuit court's determination of the accrual date and the Court of Special Appeals' affirmance of the same, Mr. Cain asserts in his brief that he has "no memory of making the alleged payment." Mr. Cain does not provide any record citation for this statement, and he never raised this issue by way of argument or affidavit. By contrast, with its motion for summary judgment, Midland attached business records pursuant to Maryland Rule 5-803(b)(6) establishing that Midland received a $300 partial payment from Mr. Cain on September 2009, along with an October 29, 2010 writ of garnishment reflecting "total credits" of $300.00. As the Court of Special Appeals aptly stated, if Mr. Cain did not make the September 25, 2009 payment, "the proper way for him to establish a dispute of fact would have been for him to file an affidavit or other evidence to that effect. At best, he has raised a 'metaphysical doubt,' which is insufficient." *Cain*, 2020 WL 4370888, at *6.

collection agents to be licensed two years prior to the commencement of that action."

Ms. Gambrell filed her lawsuit on September 28, 2015, almost seven years after the

District Court entered judgment against her on October 8, 2008, and nearly six years after

Ms. Gambrell made a partial payment to Midland on November 30, 2009. The Court of

Special Appeals affirmed the circuit court's determination of Ms. Gambrell's accrual date,

concluding that her statutory cause of action for money damages accrued when she was

placed on inquiry notice of Midland's wrongdoing and "[a]t the very latest, this occurred

when Midland received its first payment on the judgment." *Gambrell*, 2020 WL 4371297,

at *4. Ms. Gambrell did not seek review from this Court of the circuit court's accrual

determination, which was affirmed by the Court of Special Appeals.

Although neither party sought review of the accrual date established by the circuit

court, like the Court of Special Appeals, we determine that Ms. Gambrell's and Mr. Cain's

claims accrued at the latest when Midland received its first payments on the judgments.

By making the payments, they were clearly on notice of the judgment that had been entered

against them, and had the ability to determine whether Midland was licensed at the time of

the entry of the judgments—information that was a matter of public record.[18] Establishing

the accrual date for the Petitioners' claims as the date that they made their first payment is

consistent with the discovery rule established by our Court in *Poffenberger*, 290 Md. 631.

In *Crowder v. Master Financial, Inc.*, 176 Md. App. 631, 657–58 (2007), *aff'd in part,*

*Master Financial, Inc. v. Crowder*, 409 Md. 51 (2009), in determining that the borrowers'

---

[18] *See* http://www.dllr.state.md.us/financce/industry/licsearch.shtml.

27

claims under the MCPA were barred by the three-year statute of limitations, the Court of Special Appeals explained that:

> The relevant inquiry for the purpose of determining when a cause of action accrued under the discovery rule is when a plaintiff knew or reasonably should have known of the operative facts giving rise to the cause of action, not whether a plaintiff had knowledge of the applicable law. Neither ignorance of the law nor failure to consult an attorney to inquire about one's legal rights will expand the period of limitations within which suit must be filed.

(internal citations omitted). As of the date that they made payments on their judgments, the Petitioners had the ability to ascertain, through due diligence and based upon matters of public record, whether Midland was licensed at the time that it obtained the judgments.

Given that Petitioners' claims were filed more than three years after their respective accrual, they are barred by the three-year statute of limitations unless: (1) an alternative limitations period applies; (2) it was extended under a continuing harm theory; or (3) it was tolled.

### B. The Default—Three Year Statute of Limitations

As we have made clear on several occasions, the default statute of limitations for civil actions at law in Maryland, codified at CJ § 5-101, is three years, unless another provision of the Code expressly provides for an alternative limitations period. *See, e.g.*, *AGV Sports Grp., Inc. v. Protus IP Sols., Inc.*, 417 Md. 386, 392 (2010); *Greene Tree Home Owners Ass'n, Inc. v. Greene Tree Assocs.*, 358 Md. 453, 459–61 (2000). The three-year default statute was enacted in 1973 as part of one of the first articles of the Maryland Code that was adopted as a result of Governor Marvin Mandel's Commission to Revise the Annotated Code that was created in 1970. In *Tipton v. Partner's Management Co.*, 364 Md. 419 (2001), we

28

described the derivation of the general blanket statute. We need not repeat that history here, other than to note that it "was enacted as a broad three-year limitation provision for the purpose of avoiding confusion and providing clarity." *Tipton*, 364 Md. at 441.

The language of the three-year limitations statute remains unchanged from its initial enactment and states: "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." CJ § 5-101. In *Ceccone v. Carroll Home Services, LLC*, 454 Md. 680, 691 (2017), we explained that "[s]tatutes of limitations are designed to balance the competing interests of plaintiffs, defendants, and the public." We stated that a statutory period of limitations

> represents a policy judgment by the Legislature that serves the interest of a plaintiff in having adequate time to investigate a cause of action and file suit, the interest of a defendant in having certainty that there will not be a need to respond to a potential claim that has been unreasonably delayed, and the general interest of society in judicial economy.

*Id.* (citations omitted). This balance is struck "primarily to assure fairness to defendants on the theory that claims, asserted after evidence is gone, memories have faded, and witnesses disappeared, are so stale as to be unjust." *Shailendra Kumar, P.A. v. Dhanda*, 426 Md. 185, 205 (2012) (quoting *Bertonazzi v. Hillman*, 241 Md. 361, 367 (1966)).

Although statutes of limitations are not sacrosanct, *see Ceccone*, 454 Md. at 692, the Court does not craft exceptions to limitations periods without compelling reasons. We apply a "strict construction regarding tolling of statutes of limitations" and, therefore, "absent legislative creation of an exception to the statute of limitations, we will not allow any 'implied and equitable exception to be engrafted upon it.'" *Anderson v. United States*,

29

427 Md. 99, 120 (2012) (quoting *Hecht v. Resolution Tr. Corp.*, 333 Md. 324, 333 (1994) (citations omitted)); *see also Minh-Vu Hoang v. Lowery*, 469 Md. 95, 126 (2020) (noting the "well established principle" of "narrow construction of statutes of limitations"); *Garay v. Overholtzer*, 332 Md. 339, 359 (1993) (describing narrow construction of statutes of limitations as a "well established principle") (citations omitted).

As noted above, Petitioners' claims are for unjust enrichment and money damages for violations of the MCPA and MCDCA. We have previously held that a claim for unjust enrichment that seeks the remedy of restitution of money is subject to the general three-year statute of limitations. *See Ver Brycke v. Ver Brycke*, 379 Md. 669, 698 (2004). We have also held that a claim for money damages under the MCPA is subject to the three-year statute of limitations. *See Master Fin., Inc. v. Crowder*, 409 Md. 51 (2009); *Greene Tree Home Owners Ass'n, Inc. v. Greene Tree Assocs.*, 358 Md. 453 (2000). Notwithstanding our application of the three-year statute of limitations to similar claims for money damages, Petitioners assert that their claims fall within the 12-year statute of limitations applicable to specialties actions because their claims constitute an "action on a judgment" under CJ § 5-102(a)(3). For the reasons set forth below, we disagree.

### C.     12-Year Statute for Specialties Actions "On" a Judgment

The General Assembly has legislated several exceptions to the three-year limitations period. One such exception is the statute of limitations that is applicable to specialties actions, set forth in CJ § 5-102, which states:

> (a) An action on one of the following specialties shall be filed within 12 years after the cause of action accrues, or within 12 years from the date of the death of the last to die of the principal debtor or creditor, whichever is sooner:

30

(1)     Promissory note or other instrument under seal;
(2)     Bond except a public officer's bond;
(3)     Judgment;
(4)     Recognizance;
(5)     Contract under seal; or
(6)     Any other specialty.

Petitioners rely exclusively on the specialty addressed in CJ § 5-102(a)(3), which provides for a 12-year statute of limitations for "[a]n action on [a] . . . judgment." Petitioners assert that, because Midland's wrongful conduct involved the entry of a judgment, their claims for unjust enrichment and money damages arising under the MCPA and MCDCA are subject to the 12-year statute of limitations applicable to specialties actions. The Court of Special Appeals rejected this argument by relying on two reported cases of that court which addressed this very issue. *Cain*, 2020 WL 4370888, at *7 (citing *Jason v. Nat'l Loan Recoveries, LLC*, 227 Md. App. 516, 527–34 (2016); *Murray v. Midland Funding*, 233 Md. App. 254, 259–60 (2017)). In *Jason*, the Court of Special Appeals rejected an identical argument made by a similarly situated plaintiff who filed a claim against a debt buyer who had obtained a judgment against him when it was not licensed as a collection agency. *Id.* at 527–34. The intermediate appellate court held that the 12-year statute of limitations for specialty actions on a judgment—CJ § 5-102(a)(3)— did not apply to the plaintiff's claims for unjust enrichment nor to his claims for damages arising out of alleged violations of the Maryland consumer protection statutes. *Id.* Instead, the court in *Jason* determined that such claims fell within the general three-year statute of limitations. *Id.* at 531. The Court of Special Appeals reiterated these holdings in *Murray*. 233 Md. App. at 259–60. In the case at hand, the intermediate appellate court simply

31

applied its own precedent. Unsurprisingly, Petitioners contend that the Court of Special Appeals' holding in *Jason* is incorrect. This is our first opportunity to address the issue.[19] For the reasons set forth below, we agree with the analysis undertaken by our colleagues in *Jason* and hold that Petitioners' claims for unjust enrichment and monetary damages arising under the MCPA and MCDCA fall within the blanket three-year statute of limitations under CJ § 5-101 and are not actions "on a judgment" pursuant to CJ § 5-102(a)(3) subject to the 12-year statute of limitations for specialties actions.

When undertaking an exercise in statutory interpretation, we start with the cardinal rule of statutory interpretation—to ascertain and effectuate the General Assembly's purpose and intent when it enacted the statute. *75-80 Properties, L.L.C. v. RALE, Inc.*, 470 Md. 598, 623 (2020). To discern the intent of the General Assembly, our analysis begins with the normal, plain meaning of the language of the statute. *Lockshin v. Semsker*, 412 Md. 257, 275 (2010). "We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with 'forced or subtle interpretations' that limit or extend its application." *Id.* (citations omitted). If the statutory language is clear and consistent with its apparent purpose, our inquiry ordinarily ends, and we apply the statute as written. *Id.* As we stated in *Lockshin*:

> We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We

---

[19] No petition for writ of *certiorari* was filed following the Court of Special Appeals' opinion in *Jason v. Nat'l Loan Recoveries, LLC*, 227 Md. App. 516 (2016) nor its opinion in *Murray v. Midland Funding, LLC*, 233 Md. App. 254 (2017).

presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions.

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.

*Id.* at 275–76 (internal citations omitted).

In this case, both parties assert that the language of the specialties statute applicable to "[a]n action on [a] . . . judgment" is plain and unambiguous. Petitioners assert that the plain language of CJ § 5-102(a)(3) does not limit the actions covered to a creditor's enforcement of a judgment. Instead, they assert that the General Assembly intended to establish a 12-year limitations period for any action that involves the entry of a judgment. Because Petitioners' claims are based upon judgments that Midland obtained when it was unlicensed, they assert that their claims falls within the plain language of CJ § 5-102(a)(3). Unsurprisingly, Midland contends that the only reasonable reading of the plain language of CJ § 5-102(a)(3) is the interpretation adopted by the Court of Special Appeals in *Jason*— which is that an action "on" a judgment is an action seeking to *enforce* a judgment.

Notwithstanding the parties' assertions that the language plainly and unambiguously supports their respective positions, we shall conclude that the language is

ambiguous. We reach this conclusion because Petitioners' interpretation of the phrase "action on a judgment," when read in isolation, might arguably be considered to be a reasonable interpretation, given that their claims are centered around judgments that Midland obtained when it was unlicensed. *See Koste*, 431 Md. at 30–31 (determining that a statute was ambiguous notwithstanding the parties' mutual assertion of unambiguity because two reasonable interpretations could be reached when the phrase in question was read in isolation). However, Petitioners' plain language interpretation becomes untenable when viewed in the context of the structure of the statute, how it relates to other laws, its purpose, and the relative rationality and legal effect of the competing construction.

We start with the plain language of the specialties statute, which is that a 12-year statute of limitations applies to a specialties "action on [a] judgment." CJ § 5-102(a)(3). At issue is the definition or meaning of the preposition "on" and whether it means an action "involving" a judgment or whether it means an action to "enforce" a judgment. In order to determine the legislative intent, we must read the language of the statute—providing for a 12-year limitations period for an "action on a judgment"—in context and in relation to all its provisions. *Rentals Unlimited, Inc. v. Adm'r, Motor Vehicle Admin.*, 286 Md. 104, 108 (1979). Looking at the structure of the statute, although the statute does not define "specialty," it lists several types of specialties actions, upon which rights are granted. The wording of the statute indicates that it applies to "an action *on* one of the following specialties," which includes an action to enforce a promissory note or other instrument under seal, a judgment, a contract under seal, etc. Given the nature of the specific list of

34

specialties identified, it is clear that the statute is intended to apply to an action to *enforce* rights *granted by a specialty*.

This interpretation is consistent with our application of the statute in our case law. *See, e.g.*, *Goodwin & Boone v. Choice Hotels Int'l, Inc.*, 346 Md. 153 (1997) (action by a franchisor against a franchisee based upon an agreement under seal governed by the 12-year statute of limitations); *McMahan v. Dorchester Fertilizer Co.*, 184 Md. 155 (1944) (applying the 12-year statute of limitations for initiation of an action to collect "on" a sealed promissory note); *Johnson v. Foran*, 59 Md. 460, 461–63 (1883) (noting that execution cannot be issued more than 12 years after the date of the judgment). In *Rentals Unlimited, Inc.*, we remarked that, "[i]n Maryland, money judgments may be *enforced* by various methods including a *new action on a judgment*[.]" 286 Md. at 113 (emphasis added). In *O'Hearn v. O'Hearn*, 337 Md. 292 (1995), we held that a former wife's action against her former husband for reimbursement of their children's medical and dental expenses fell within the 12-year specialties statute because the parties' separation agreement was incorporated into the divorce decree, and therefore, the claims were a suit "on a judgment." In other words, the wife was seeking to *enforce* the terms of the separation agreement, the obligations of which had been *incorporated* into the divorce judgment. *Id.* at 301. By contrast, Petitioners are not seeking to enforce a judgment—quite the opposite—they are seeking a declaration that the judgments obtained against them are void (a declaration that is no longer available given our holding in *Finch III*) and money damages arising from the entry of the judgments against them.

35

Our interpretation of the statute as providing a 12-year statute of limitations on a specialties action to enforce a judgment is also confirmed by its legislative history. The present statute, CJ § 5-103, is a recodification of former Md. Code (1957), Article 57, § 3, which provided:

> *No* bill, testamentary, administration or other bond (except sheriff's and constables' bonds), *judgment*, recognizance, statute merchant, or other staple or other specialty whatsoever, except as shall be taken for use of the State, *shall be good and pleadable, or admitted in evidence against any person* in this State after the principal debtor and creditor have both been dead twelve years, or the debt or thing in action is above twelve years standing . . . .

(Emphasis added). The language in the original specialties statute clearly contemplated a 12-year statute of limitations for actions on a judgment brought *against* a judgment debtor. There is nothing in the prior version of the statute that could be construed to establish a 12-year statute of limitations for a judgment debtor to assert a claim against a judgment creditor for a matter arising out of the entry of a judgment. As we explained in detail in *Tipton*, the 1970 Code Revision process was not intended to, and did not change the substantive meaning of this section. 364 Md. at 437–45.

Our interpretation of the plain language of CJ § 5-102(a)(3)—as establishing a 12-year statute of limitations only to *enforce* a judgment and not establishing the same period to *challenge* a judgment—is consistent with principles of finality expressed by the Supreme Court and by this Court for over a century. In *Milwaukee County v. M.E. White Co.*, Justice Harlan Stone explained the difference between "a cause of action on a judgment" and an "action upon which the judgment was entered" as follows:

> A cause of action on a judgment is different from that upon which the judgment was entered. In a suit upon a money judgment for a civil cause of

36

action, the validity of the claim upon which it was founded is not open to inquiry, whatever its genesis. Regardless of the nature of the right which gave rise to it, the judgment is an obligation to pay money in the nature of a debt upon the specialty. Recovery upon it can be resisted only on the grounds that the court which rendered it was without jurisdiction.

296 U.S. 268, 275 (1935). In *Finch III*, we expressed similar sentiments. We observed that "[j]udgments, by and large, are meant to be final. Even the court that rendered them has but a limited ability to open and revise them." 463 Md. at 607. Citing to our case law dating back 141 years, which has been repeated several times since, we noted that

"[i]t is most desirable of course that there should be an end to litigation, and a judgment is presumed to be a settlement of all matters in dispute in that particular case; and once entered, parties are no longer under the necessity of preserving the evidences upon which their claims rested."

*Id.* (citing *Abell v. Simon*, 49 Md. 318, 324 (1878)). To interpret the specialties statute as providing a 12-year statute of limitation for a debtor to challenge a judgment, or activities related to the entry of the judgment, runs contrary to the very principles we recently expressed in *Finch III* concerning the finality of judgments.

By contrast, the competing construction—that the General Assembly would establish a longer limitations period only to *enforce* a judgment—is consistent with the general purpose of collection laws, which enable judgments to be paid over a longer time period thereby ensuring that payment is not unduly burdensome to a judgment debtor. A money judgment is valid for 12 years from the date of entry or its most recent renewal. *See* Maryland Rule 2-625. Once a money judgment is entered, the law provides several collection tools at the judgment creditor's disposal, such as discovery in aid of enforcement (*see* Maryland Rule 2-633) and a garnishment of the judgment debtor's wages (*see* CL §§

37

15-601 through 15-606).  These laws also protect a debtor's rights during the post-judgment collection process.  Our societal standards have evolved from the colonial practice of imprisoning debtors for nonpayment of debts[20] to the enactment of laws that limit a judgment creditor's ability to attach a judgment debtor's wages over a statutorily established amount per pay period.[21]  These protections give a judgment debtor some breathing room to pay debts over time (of course, at a cost in the form of post-judgment interest), and correspondingly, the specialties statute gives a judgment creditor a longer time period for the collection of payment on the judgment.

Finally, we conclude that Petitioners' interpretation would also create illogical results.  In other contexts, we have rejected arguments that statutory claims for money damages fall within other categories of the 12-year specialties statute instead of the three-year default statute.  For example, as noted above, in *Greene Tree Home Owners Ass'n v. Greene Tree Assocs.*, 358 Md. 453 (2000), we held that a claim based on the MCPA did not constitute a specialty action within the purview of CJ § 5-106(a)(6) (which includes "[a]ny other specialty") and were therefore subject to the three-year period of limitations provided for in CJ § 5-101.  In *Master Financial, Inc. v. Crowder*, 409 Md. 51 (2009), we held that the three-year statute of limitations governed claims brought by borrowers against their lenders for deceptive trade practices under the MCPA where the alleged underlying

---

[20] *See* Md. Const., art. III § 38, which establishes a constitutional ban against imprisonment of debtors.

[21] *See* CL §§ 15-601–606.

38

conduct involved lack of licensure in violation of the Secondary Mortgage Loan Law.[22]

*See also NVR Mortgage Fin., Inc. v. Carlsen*, 439 Md. 427 (2014) (holding that a violation

of a provision of the Maryland Finder's Fee Act, CL § 12-805(d) is subject to the default

three-year statute of limitations and is not an "other specialty" under CJ § 5-102(a)(6));

*AGV Sports Group*, 417 Md. 386 (holding that a private cause of action under the State

Telephone Consumer Protection Act did not fall within the "any other specialty" category

for statute of limitations purposes and that such claims were subject to the three-year

---

[22] In *Greene Tree* and *Crowder*, the plaintiffs alleged that their claims for money damages under the MCPA fell within CJ § 5-102(a)(6), which establishes a 12-year statute of limitations for an action on "[a]ny other specialty." *Greene Tree Home Owners Ass'n v. Greene Tree Assocs.*, 358 Md. 453 (2000); *Master Fin., Inc. v. Crowder*, 409 Md. 51 (2009). We rejected these arguments and determined that the three-year default statute of limitations applied. In *Crowder*, we offered a "workable general principle" for determining when a statutory action falls within the "any other specialty" category under CJ § 5-102(a)(6). The framework has the following criteria:

> (1) the duty, obligation, prohibition, or right sought to be enforced is created or imposed solely by the statute, or a related statute, and does not otherwise exist as a matter of common law; (2) the remedy pursued in the action is authorized solely by the statute, or a related statute, and does not otherwise exist under the common law; and (3) if the action is one for civil damages or recompense in the nature of civil damages, those damages are liquidated, fixed, or, by applying statutory criteria, are readily ascertainable.

*Crowder*, 409 Md. at 70. Applying this framework to the plaintiff's claims for violations of the Secondary Mortgage Loan Law ("SMLL") and the MCPA, we determined that the applicable statutory provisions of the SMLL provided for civil penalties for violations of its provisions, and that the damages were for a fixed determinable amount. Accordingly, we concluded that SMLL-based claims fell within the "narrow catchall" that is the "[a]ny other specialty" provision. *Id.* at 72. By contrast, we determined that an action for unliquidated damages under the MCPA did not constitute a statutory specialty and was therefore subject to the three-year default statute of limitations. In this case, Petitioners do not allege that their statutory claims for money damages under the MCPA and MCDCA fall within the "other specialty" exception under CJ § 5-106(a)(6), presumably because of our holding in those cases.

blanket limitations statute). It would be illogical to apply a strained interpretation to the specialties statute and hold that a 12-year limitations period applies to claims under the MCPA for unlicensed collection activities that result in the entry of a judgment, but only apply a three-year limitations period to claims for similar conduct that by happenstance, does not result in the entry of a judgment.

In summary, we hold that the 12-year statute of limitations under CJ § 5-102(a)(3) is intended to apply to an action to enforce a judgment. Because the Petitioners are not seeking to enforce a judgment, but rather, are seeking money damages resulting from Midland's efforts to collect the judgment, CJ § 5-102(a)(3) does not apply and such claims are subject to the default three-year statute of limitations under CJ § 5-101.

## D. *Continuing Harm Doctrine*

To avoid the three-year limitations bar to their claims, the Petitioners also contend that the continuing harm doctrine applies to change the accrual date for their claims since they made multiple payments to Midland over a period of time. To support their argument, Petitioners rely upon this Court's application of the continuing harm doctrine in *Litz v. Maryland Department of Environment*, 434 Md. 623 (2013). Midland argues that this Court should not apply the continuing harm doctrine in these cases, pointing out that the Court has not applied the doctrine outside of the context of claims for nuisance and trespass where the conduct was continuing in nature. Midland also asserts that the application of the doctrine is particularly inappropriate under the facts of these cases—noting that neither

Petitioner alleges that Midland's post-judgment collection activities occurred during a period when it was not licensed.

The continuing harm doctrine permits recovery by an injured party caused by a tortfeasor's sequential breaches of an ongoing duty by imposing a new limitations period for each breach. *Litz*, 434 Md. at 649. As the Court of Special Appeals explained in rejecting its application here, the doctrine is usually applied in nuisance, trespass, and other tort cases. We examine the Maryland cases where the doctrine has been discussed, and the limited contexts in which it has been applied.

In *Shell Oil Company v. Parker*, 265 Md. 631 (1972), the owner of an independently owned and operated Shell Oil service station filed suit against Shell Oil Company ("Shell") after Shell constructed a billboard that falsely stated that another service station was the last Shell station on a highway. The independently owned station was in fact the last station on the highway. The owners alleged that the false message on the billboard forced them out of business. They filed an action in the circuit court claiming that Shell had erected the false sign "for the specific purpose of diverting business from the independently owned service station . . . to the company owned service station of Shell and that the action was part of an intentional and malicious plan to divert such business[,]" which they asserted was "illegal, deceitful and fraudulent[.]" *Id.* at 635–36 (cleaned up). Shell erected the sign in 1962 or 1963. *Id.* at 634. The owners of the independently owned station filed suit in November 1968. *Id.* at 635. With no discussion or analysis, we determined that the station owner's "rights were continuing in nature and were not barred by the three year [s]tatute

41

of [l]imitations for the continuing violation during the three year period prior to the filing of the action." *Id.* at 636.

In *MacBride v. Pishvaian*, 402 Md. 572 (2007), we discussed the continuing harm doctrine in the context of a suit brought by a tenant against a landlord alleging claims for unfair and deceptive trade practices, fraud, negligence, breach of contract, and unjust enrichment. In that case, the tenant argued that the continuing harm theory should apply to extend the accrual date for limitations purposes, where the condition of her apartment continued to deteriorate over time. *Id.* at 576. At the commencement of the lease in 1998, the apartment was "nice and clean," although the tenant "noticed water spots on the ceiling and a suspicious odor." *Id.* Subsequently, during heavy rains, water would soak the ceiling, walls and carpet. The tenant also discovered a mold problem, and eventually moved out in November 2004.

In seeking to avoid the limitations bar, the tenant argued that her claims involved "an ongoing harm, in particular, the deteriorating condition of her apartment." *Id.* at 585. We noted that this Court and the Court of Special Appeals have recognized the "continuing harm" doctrine, "which tolls the statute of limitations in cases where there are continuous violations." *Id.* at 584 (citing *Shell Oil*, 265 Md. at 636; *Edwards v. Demedis*, 118 Md. App. 541, 562 (1997); *Duke St. Ltd. P'ship v. Bd. of Cty. Comm'rs of Calvert Cty.*, 112 Md. App. 37, 50 (1996)). Although we pointed out that the Maryland appellate courts had previously recognized the doctrine, we also observed that we had "not [] found a reported opinion, in either this Court or the intermediate appellate court, involving an application of the doctrine of continuing harm." *MacBride*, 402 Md. at 584 n.7 (cleaned up). We were unpersuaded

42

by the tenant's argument that the doctrine should apply to the facts presented in her case, concluding that her "complaints are merely the *continuing ill effects* from the original alleged violation," and not a "series of acts or course of conduct . . . that would delay the accrual of a cause of action to a later date." *Id.* (emphasis in original) (internal quotations omitted).[23]

In contrast to *MacBride*, we applied the doctrine in *Litz*, which involved a property owner's complaint for negligence, nuisance, trespass and inverse condemnation. The plaintiff alleged that the Maryland Department of the Environment (MDE), a county health department, and a municipality, by their inactions, failed to enforce state regulations and a consent order to address failing individual septic systems within the vicinity of the plaintiff's property. Over time, the effluent from the failing septic systems leached into the ground water and caused plaintiff's private lake to become contaminated to the point that she was unable to operate her private campground and pay her mortgage and, as a result, caused her property to be sold in a foreclosure sale. We applied the continuing harm doctrine and held that the plaintiff had pleaded a sufficient injury to withstand dismissal of her claims because the complaint alleged that the defendants, by their inactions, caused a continuous physical invasion of polluted effluent onto the plaintiff's property, which was allegedly causing a continuous injury over an extended period of time. *Id.* We explained

---

[23] As the Dissent correctly notes at Slip Op. 6, in *Litz*, we disavowed part of the dicta in the *MacBride* opinion that stated that the continuing harm doctrine would not toll the statute of limitations if the plaintiff "sooner knew or should have known of the injury or harm." *Litz v. Maryland Dep't of Env't*, 434 Md. 623, 647–48 n.9 (2013); *Id.* at 586 (internal quotations omitted).

that the doctrine is premised on the notion that, where the violation or the wrongful act is ongoing or continuing in nature (as opposed to the continued ill effects from the original alleged violation), the ongoing violations will not be barred by the statute of limitations merely because one or more of them occurred earlier in time. *Id.* at 646.

In *Duke Street v. Board of Commissioners of Calvert County*, the Court of Special Appeals rejected the argument that the continuing harm doctrine should apply to a constitutional takings claim arising from an allegation that the plaintiff was coerced into deeding land for a public street, explaining that, "[w]hile there may have been *continuing ill effects* from the original alleged violation, there was not a series of acts or course of conduct by [the defendant] that would delay the accrual of a cause of action to a later date." 112 Md. App. 37, 52 (1996) (emphasis in original).

We are not persuaded to apply the continuing harm doctrine under the facts of this case to extend the accrual date for Petitioners' claims based upon payments that they made to Midland during the period after which Midland became licensed. As discussed above, we have only applied the doctrine in limited contexts involving *ongoing wrongful conduct*—in the case of *Shell Oil*, which involved an ongoing fraud arising from a false statement erected on a billboard, and in the case of *Liz,* involving an ongoing trespass and nuisance.

Here, the wrongful conduct that forms the basis of Petitioners' claims is Midland's unlicensed status when it filed the collection actions and obtained the judgments against the Petitioners. Although Midland was unlicensed at the time that it obtained judgments against Mr. Cain and Ms. Gambrell, Midland subsequently entered into the settlement

44

agreement with the Licensing Board on December 17, 2009, whereby Midland agreed to stay all collection-related actions until it was issued a license. The Licensing Board issued Midland a collection agency license on January 15, 2010. The collection activities upon which Petitioners seek to extend their accrual date for limitations purposes occurred *after* Midland became licensed. We decline to apply the continuing harm doctrine where the alleged continuing harm is Midland's attempts to collect on the judgments *after* it became licensed. *See Finch III*, 463 Md. at 606 (observing that LVNV's collection activities were unlawful under MCALA, MCDCA and MCPA "*until it obtained its license* in February 2010 . . .") (emphasis added).[24]

### E. Class Action Tolling

Mr. Cain's next argument[25] requires that we decide whether the limitations period was tolled during the pendency of class action cases that were filed prior to the cases that are

---

[24] The Dissent contends that our refusal to apply the continuing harm doctrine to extend the accrual date for limitations purposes is inconsistent with our holding in *Finch III*. Dissent Slip Op. at 2–3. It is not. Although we stated in *Finch III* that a judgment creditor could be barred by injunction from engaging in prospective enforcement action and could liable for damages under the MCDCA and MCALA, as explained in note 10, *supra*, we specifically declined to address the statute of limitations defense presented in that case, and left the issue open for the circuit court to consider on remand. *See Finch III*, 463 Md. at 612 ("Because of this remand for further proceedings with respect to damages, we need not address the issues raised in respondent's cross petition. If raised again in the Circuit Court, the context may be different."). In addition to declining to address the limitations issue, we observed that LVNV's collection activity was unlawful under the MCALA, MCDCA and MCPA "*until it obtained its license in February 2010*[.]" 463 Md. at 606 (emphasis added).

[25] Ms. Gambrell did not raise class action tolling in her petition for writ of *certiorari*. Accordingly, we shall only consider the application of the doctrine to Mr. Cain's claims. *See Robinson v. Balt. City Police Dep't*, 424 Md. 41, 49 (2011). Even if we were to consider the application of the doctrine where it was not raised in her petition for writ of

the subject of this appeal. Mr. Cain contends that we should apply our class action tolling rule, described below, to toll the applicable statute of limitations on his claims filed in the instant case for a time period equal in duration to the pendency of the federal *Johnson* case (wherein he was a putative class member). Midland asserts that our class action tolling doctrine does not apply to toll claims filed by a former member of a putative class action who files a *successive* class action, as opposed to an action for individual claims. Midland also points out that this Court has not adopted cross-jurisdictional class action tolling—in other words, the tolling of individual claims that are filed in a Maryland court by a former putative member of a class action that was pending in federal court or another state court.

Before we address the specifics of the parties' class action tolling contentions, it is useful to briefly discuss our general limitations on judicial expansion of statutes of limitations established by the Legislature. We have previously explained that:

> Statutes of limitation are intended simultaneously to provide adequate time for diligent plaintiffs to file suit, to grant repose to defendants when plaintiffs have tarried for an unreasonable period of time, and to serve societal purposes, including judicial economy. There is no magic to a three-year limit. It simply represents the legislature's judgment about the reasonable time needed to institute suit.

---

*certiorari*, Ms. Gambrell has not made clear onto which class actions she should be permitted to piggyback. In her brief, Ms. Gambrell appears to assert that she was a putative member of Mr. Cain's class action. In her appeal before the Court of Special Appeals, Ms. Gambrell asserted that the running of the statute of limitations on her claims for money damages was tolled by two pending class actions—the *Cain* case that is the subject of this matter, as well as the case of *Murray v. Midland Funding, LLC*, No. 02-C-14-187207, filed in the Circuit Court for Anne Arundel County on April 24, 2014, which we briefly discussed in note 14, *supra*. As noted, Ms. Murray voluntarily dismissed her state court case on August 5, 2017. In her Amended Complaint, Ms. Gambrell only alleged that she should have the benefit of tolling from the *Murray* Action "and other related actions against Midland." We will not consider these vague assertions where she did not raise them in her petition for writ of *certiorari*.

*Shailendra Kumar, P.A. v. Dhanda*, 426 Md. 185, 209 (2012) (cleaned up) (quoting

*Bragunier Masonry Contractors v. Catholic Univ. of Am.*, 368 Md. 608, 627 (2002)). Such

statutes "are by definition arbitrary, and their operation does not discriminate between the

just and the unjust claim, or the avoidable and unavoidable delay." *Walko Corp. v. Burger*

*Chef Sys., Inc.*, 281 Md. 207, 210 (1977) (quoting *Chase Secs. Corp. v. Donaldson*, 325

U.S. 304, 314 (1945)).

Recognizing that the Legislature has exercised its judgment in determining the

reasonable time needed to institute suit, we have adopted few judicial tolling exceptions.

*See Garay v. Overholtzer*, 332 Md. 339, 359 (1993) (noting the general rule that "where

the legislature has not expressly provided for an exception in a statute of limitations, the

court will not allow any implied or equitable exception to be engrafted upon it") (citation

and quotation omitted).

In *Bertonazzi v. Hillman*, 241 Md. 361 (1966), we recognized a judicial tolling

exception where a case was filed timely, but in the incorrect forum (based upon the

plaintiff's mistaken belief that the defendant lived in Baltimore County rather than

Baltimore City). In a later case, *Walko Corp.*, we further explained the rationale behind

the narrow exception to the general rule against implying exceptions to the statute by

explaining that, at the time, Maryland was one of few states to have neither a saving statute

nor a venue transfer statute—"a fact which, absent the Court's limited holding, might well

have wrought great injustice on unwitting plaintiffs in particular cases." 281 Md. at 214.

47

In this case, Mr. Cain contends that this Court should apply a judicial tolling exception based upon class action tolling. The concept of "class action tolling" is rooted in two decisions of the Supreme Court, which this Court adopted in *Philip Morris USA, Inc. v. Christensen*, 394 Md. 227, 238 (2006), *abrogated on other grounds*, *Mummert v. Alizadeh*, 435 Md. 207 (2013). Accepting Mr. Cain's application of the doctrine would require that we expand the Maryland class action tolling rule that we pronounced in *Christensen* in two ways: first, we would apply the rule not just to *individual* claims filed by a putative class member after class action certification was denied, but also to *successive class action suits*; and second, we would expand the rule to include cross-jurisdictional claims (in order words, where the initial putative class action was filed in federal court or in another state court). As explained below, we are unwilling to expand our class action tolling doctrine to include successive class actions and instead adopt the approach taken by the Supreme Court in *China Agritech, Inc. v. Resh*, ___ U.S. ____, 138 S. Ct. 1800 (2018). In order to explain our unwillingness to expand the class action tolling doctrine to successive class actions, it is useful to briefly discuss its origin and purpose.

1. *Supreme Court Jurisprudence Establishing Class Action Tolling for Intervenor Claims and Individual Claims*

In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the Supreme Court first set forth the conceptual basis for class action tolling. That case originated as a class action, but eventually the federal district court ruled that the number of possible plaintiffs who could assert meritorious claims was not large enough to warrant class action status. *Id.* at 543. After the court's order denying class action certification, more than sixty

48

local government entities in the State of Utah moved to timely intervene as individual plaintiffs in the still-pending action, shorn of its class character. All of them had been identified in the class action complaint as members of the proposed class. The federal district court denied the motions on the ground that the relevant statute of limitations had expired for the would-be intervenors.

The Supreme Court determined that the district court erred and set forth the conceptual basis for class action tolling in the context of federal class action litigation. The Court observed that the federal rule governing class actions, Rule 23, was intended to promote efficiency and economy of litigation. *Id.* at 553. The Court concluded that tolling was necessary because, without a rule that tolls the statute of limitations, members of the putative class would be forced to file protective motions to join or intervene in the action in order to ensure that they would not be barred from bringing suit individually in the event the court determined that the action could not be maintained as a class action. *Id.* at 553–54. Thus, the Court concluded as follows:

> We are convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.[]

*Id.* at 554. Despite its adoption of the tolling rule, the Court narrowly expressed its holding as follows:

> We hold that in this posture, at least where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,' the commencement of the original class suit tolls the running of the statute for all purported members of the class

49

who make timely motions to intervene after the court has found the suit inappropriate for class action status.

*Id.* at 552–53. The issue in *American Pipe* was whether putative members of the proposed plaintiffs' class could *intervene* in the case once the class certification was denied. In *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983), the Court considered whether the filing of a putative class action tolled the statute of limitations for putative class members who filed *individual claims* after class certification was denied rather than timely intervened in the original action. The Court held that *American Pipe* applied to toll the statute of limitations for the individual claims of putative class members filed after denial of class certification in the same manner as claims for intervenors. *Id.* at 350–51. The Court explained that the extension of *American Pipe* to later-filed individual claims was necessary for the same reasoning articulated for intervenors' claims—to avoid inefficiencies that would arise if individual putative class members were required to file individual protective claims in the class action litigation. *Id.* The Court articulated many reasons that a plaintiff may prefer filing an individual claim over intervention: the putative class member may choose to file in a more convenient forum than the forum of the original putative class action, the putative class member may not wish to share control of the litigation with the other plaintiffs in the original action, and if intervention is not available as a matter of right, the plaintiff runs a risk of the denial of its motion to intervene under Federal Rule 24(b). *Id.*

*Maryland's Adoption of the American Pipe Class Action Tolling Rule*

Both *American Pipe* and *Crown, Cork & Seal* involved the application of Federal Rule 23, which allowed for the tolling of the statute of limitations for *federal claims* filed in *federal court* following the denial of class certification. In *Christensen*, 394 Md. 227, we addressed whether Maryland would adopt the class action tolling rule articulated by the Supreme Court in *American Pipe* and *Crown, Cork &* Seal for intra-jurisdictional claims— that is, individual claims filed in Maryland state court by a former member of a putative class after the denial of class action certification by another Maryland state court. (For simplicity's sake, we shall refer to the Supreme Court rule as articulated in *American Pipe* and extended by *Crown, Cork & Seal*, as the "*American Pipe* class action tolling rule.").

In *Christensen,* Mr. Christensen had been a participant in a putative class action that was filed in the Circuit Court for Baltimore City against defendant manufacturers of tobacco and their Maryland distributors. Although Mr. Christensen was not a named plaintiff nor an intervenor in the class action suit, he participated in the litigation, including testifying at *a de bene esse* deposition. *Id.* at 234. After the circuit court issued a class certification order, we granted the defendants' petition for a writ of mandamus in the class action and issued a writ of mandamus directing the circuit court to vacate the class certification order.

After Mr. Christensen died, his wife brought a survival and wrongful death action against the defendants who had also been defendants in the putative class action litigation. The circuit court granted the defendants' motion for summary judgment on the basis that the claims were barred by the statute of limitations. We granted *certiorari* to determine whether, and under what circumstances, the pendency of a putative class action tolls the

51

statute of limitations for the members of a putative plaintiff class that were not the named plaintiffs in the action. *Id.* at 231.

In ultimately holding that we would adopt the *American Pipe* class action tolling rule, we made several observations and conclusions. First, we noted that our "precedents generally have been less than hospitable to the concept of judicially created tolling exceptions[.]" *Id.* at 237. Citing to *Bertonazzi*, we observed that we had been willing to judicially establish a tolling exception when doing so would be *consistent with the purposes of statutes of limitations*. We identified, for the first time, two factors which guide our consideration of whether to apply judicial tolling in a particular case. Specifically, we stated that

> we will recognize a tolling exception to a statute of limitations if, and only if, the following two conditions are met: (1) there is persuasive authority or persuasive policy considerations supporting the recognition of the tolling exception, and (2) recognizing the tolling exception is consistent with the generally recognized purposes for the enactment of statutes of limitations.

*Id.* at 238. We noted the several instances in which we declined to recognize a tolling exception to a statute of limitations where the exception in question failed to meet one or more of the *Bertonazzi* requirements.[26] *Id.* at 240–41.

---

[26] *See, e.g.*, *Walko Corp. v. Burger Chef Sys., Inc.*, 281 Md. 207 (1977) (declining to recognize a tolling exception to the three-year statute of limitations on tolling actions where the appellant argued that the statute was tolled during the pendency of its motion to intervene in another suit involving the appellee in the United States District Court for the District of Columbia); *Booth Glass Co., Inc. v. Huntingfield Corp.*, 304 Md. 615 (1985) (declining to recognize a tolling exception to suspend the running of a statute of limitations applicable to a claim based upon the negligent installation of a product during the installer's attempted repair where the defendant installer did not hold out an inducement not to file suit or indicate that limitations would not be pleaded); *Burket v. Aldridge*, 241 Md. 423, 428 (1966) (declining to recognize a tolling exception that would toll the general three-

52

We concluded that in this instance, our adoption of the *American Pipe* class action tolling rule met both the *Bertonazzi* requirements. First, we noted that the Supreme Court's principal justification for the *American Pipe* class action tolling rule was its necessity for the preservation of the class action procedures set forth in Federal Rule 23. We observed that our class action rule—Maryland Rule 2-231—was modeled after Federal Rule 23, and that the aspects of the federal rule that were principally relied upon by the Supreme Court in reaching its holding in *American Pipe* are virtually identical to subsections (a) and (b) of Maryland Rule 2-231. We observed that the majority of states with class action rules similar to Federal Rule 23 have followed the *American Pipe* class action tolling rule. *Id.* at 250–51.

Ultimately, we found the principal rationale offered by the Supreme Court in *American Pipe* and *Crown, Cork & Seal* to be persuasive—that one of the main reasons for having a class action procedure in the first place is to promote judicial economy and efficiency. *Id.* at 253 (citing *American Pipe*, 414 U.S. at 553). We observed that "[c]lass action procedures are designed to promote these ends by preventing duplication, permitting when possible the claims of large classes of persons to be litigated at once[,]" as opposed to individual claims "or as a joint action in order to avoid unnecessary repeated litigation

---

year statute of limitations applicable to tort actions upon the alleged tortfeasor's death because the absence of an express statute provision providing for such tolling was understandable in "light of the purposes of [the] Statute of Limitations"); *McMahan v. Dorchester Fertilizer Co.*, 184 Md. 155, 159–60 (1944) (declining to recognize a tolling exception to a 12-year statute of limitations for initiation of an action to collect on a note that would suspend the running of the statute upon a payment of principal on the grounds that the statute expressly provided for a three-year suspension upon each payment of interest, observing that the Legislature had expressly indicated when and how payments on a note should suspend the running of the limitations period).

of substantially similar issues, and to avoid the procedural inefficiencies involved with the joinder of large numbers of parties and with the litigation of joint actions involving large numbers of parties." *Id.* at 253–54. We noted that the "ends of efficiency and economy" are undermined where members of a putative plaintiff class "have a genuine incentive to file prophylactic motions to intervene or individual complaints in order to prevent their claims being barred by the statute of limitations." *Id.* at 254. With principles of judicial economy and efficiency in mind, we agreed with the *American Pipe* Court that, "in the absence of a class action tolling rule, putative class members will . . . have a sufficiently strong incentive to file protective claims to justify adoption of a class action tolling rule." *Id.* We also agreed with the *Crown, Cork & Seal* Court's conclusion that the same principles of judicial economy and efficiency compelled the application of the tolling rule to putative class members who chose to pursue later-filed individual claims in the event that class action certification is denied. *Id.*

In order to ensure that our adoption of the *American Pipe* class action tolling rule was consistent with the *Bertonazzi* factors outlined for judicial recognition of tolling exceptions in Maryland, we added some additional notice restrictions. Specifically, we held that, in addition to the requirements outlined in *American Pipe*, in order for the plaintiff to claim the benefit of class action tolling in a later-filed individual claim, the plaintiff must show that the class action complaint: (1) "notified the defendants of not only . . . the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs[;]" and (2) "the individual suit must concern the same evidence, memories, and witnesses as the subject matter of the original class suit[.]" *Id.* at 255–56 (internal quotations

54

omitted).[27] We stated that "[c]laims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe*[.]" *Id.* at 250. We added these additional requirements in observance of our "long recognized . . . policy considerations in favor of strict application of statutes of limitations" and our adoption of tolling exceptions only where they are consistent with the purposes of statutes of limitations. *Id.* at 256. Finally, in *Christensen*, we pointed out that we were expressing "no opinion as to whether we would recognize the doctrine of cross-jurisdictional class action tolling, under which the filing of a putative class action in a different jurisdiction tolls the statute of limitations for putative class members to file individual claims" in Maryland. *Id.* at 256 n.9. We further observed that "the supreme courts of states that recognize class action tolling have split on the issue of whether to adopt cross-jurisdictional tolling." *Id.* With this case, we pick up our discussion on cross-jurisdictional class action tolling where we left off in *Christensen*. But first, we address Mr. Cain's argument that we should extend *American Pipe* class action tolling to successive class action cases.

### 3. We Decline to Adopt Successive Class Action Tolling

As previously noted, Mr. Cain's claims are different from the claims that were tolled in *Christensen*, which involved the application of the *American Pipe* class action tolling rule to individual claims asserted by the personal representative of a former putative

---

[27] The additional requirements that we identified in connection with our adoption of the *American Pipe* class action tolling rule were the views expressed by Justice Blackmun's concurrence in *American Pipe* (as to our additional requirement (1)) and by Justice Powell's concurrence in *Crown, Cork & Seal* (as to our additional requirement (2)). *See Philip Morris USA Inc. v. Christensen*, 394 Md. 227, 255–56 (2006).

member of a class after an unsuccessful class certification. Here, Mr. Cain seeks the application of class action tolling to *successive class action suits*. In *China Agritech*, the Supreme Court declined to extend the *American Pipe* class action tolling rule to seriatim class action suits. Just as we find the Supreme Court's logic persuasive in its application of class action tolling to later-filed *individual claims* under the *American Pipe* class action tolling rule, so too are we equally informed by the Court's logic in *refusing* to extend the doctrine to claims involving *successive class action suits*. Because these matters involve questions of state law, we are not bound by the Supreme Court's jurisprudence on this topic. However, we find the Court's reasoning to be persuasive and shall follow it.

In *China Agritech*, the Supreme Court addressed the following question: "Upon denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations?" ___ U.S. ___, 138 S. Ct. at 1804. The Court's answer was no, and it concluded that:

> *American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails. But *American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations.

*Id.*

Writing for the Court, Justice Ginsburg explained that the principles of "efficiency and economy of litigation" that support tolling of individual claims "do not support [the] maintenance of untimely successive class actions[.]" *Id.* at 1806. The Court noted that successive class action suits "would allow the statute of limitations to be extended time

56

and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation." *Id.* at 1808. The Court observed that

> [t]he time to file individual actions once a class action ends is finite, extended only by the time the class suit was pending; the time for filing successive class suits, if tolling were allowed, could be limitless. . . . Endless tolling of a statute of limitations is not a result envisioned by *American Pipe*.[]

*Id.* at 1809. The Court concluded by stating that:

> The watchwords of *American Pipe* are efficiency and economy of litigation, a principal purpose of Rule 23 as well. Extending *American Pipe* tolling to successive class actions does not serve that purpose. The contrary rule, allowing no tolling for out-of-time class actions, will propel putative class representatives to file suit well within the limitation period and seek certification promptly. For all the above-stated reasons, it is the rule we adopt today: Time to file a class action falls outside the bounds of *American Pipe.*

*Id.* at 1811. We can express these sentiments no better than Justice Ginsburg and adopt the *China Agritech* Court's logic and reasoning. Applying these principles within the context of our Maryland tolling jurisprudence, we determine that adopting successive class action tolling would be inconsistent with the *Bertonazzi* factors. There is no persuasive authority or policy considerations that would support the recognition of tolling of successive class action suits—such an exception is inconsistent with notions of judicial economy and efficiency that form the basis of our Rule 2-231 class certification process.[28] Additionally,

---

[28] The Supreme Court's concerns that multiple class action lawsuits may attempt to piggyback off each other for tolling purposes appears to be prophetic here. As Midland noted in its brief, after the settlement of *Johnson v. Midland Funding, LLC*, D. Md. Civil. No. 09-2391, which is discussed in Part II.A.2 of this opinion, three class action suits were filed by the same counsel—Mr. Cain's putative class action, filed in the Circuit Court for Baltimore City; Ms. Gambrell's putative class action, filed in the Circuit Court for Anne Arundel County; and *Cassandra A. Murray v. Midland Funding, LLC*, No. 02-C-14-187207, filed in the Circuit Court for Anne Arundel County (the "*Murray* Action"). In her Amended Complaint, Ms. Gambrell alleges that she should have the benefit of the tolling

adopting such a rule would be antithetical to the generally recognized purposes of the statute of limitations—"to encourage prompt resolution of claims, to suppress stale claims, and to avoid the problems associated with extended delays in bringing a cause of action, including missing witnesses, faded memories, and the loss of evidence." *Anderson*, 427 Md. at 118. To permit tolling based upon successive class action suits could result in a "rolling tolling" approach to class action suits, whereby a putative class member could toll his or her statute of limitations after the denial of one class action certification in one circuit court by filing a successive class action in one of the other 23 state circuit courts. Such an approach would be anathema to the notions of judicial economy and efficiency that the class certification process envisioned by Maryland Rule 2-231. Accordingly, we hold that *American Pipe* class action tolling does not apply to permit a putative class member, upon denial of class certification, to file a successive class action past the expiration of the statute of limitations.

4.     *We Adopt Cross-Jurisdictional Class Action Tolling for Later Filed Individual Claims*

At this stage of the pleadings, Mr. Cain's complaint involved his individual claims, as well as those brought on behalf of the *putative* class that has not yet been certified. Our above holding causes the putative class claims to fall to the wayside. This leaves Mr. Cain's individual claims. His individual claims only survive if we recognize *cross-*

---

from the *Murray* Action "and other related cases against Midland." We decline to extend class action tolling to successive class action cases, which would encourage this rolling approach to the tolling of claims and would defeat the very purpose behind Maryland Rule 2-231—the efficient and timely resolution of class action claims.

*jurisdictional* class action tolling for later filed individual claims—in other words, whether a class action filed in another jurisdiction tolls the applicable Maryland statute of limitations for later-filed individual claims after the denial or dismissal of the putative class members' claims in another jurisdiction.

As previously noted, our opinion in *Christensen* expressed no opinion on whether we would recognize the doctrine of cross-jurisdictional class action tolling. 394 Md. at 254 n.9. We pointed out that our sister states that have considered the issue are split on its recognition. *Id.*[29] In the years since our 2006 decision in *Christensen*, we note that several of the supreme courts in our sister states have adopted cross-jurisdictional tolling. *See, e.g.*, *Bermudez Chavez v. Occidental Chem. Corp.*, 158 N.E.3d 93, 104 (2020) ("In sum, New York recognizes *American Pipe* tolling for absent class members of putative class actions filed in other state and federal courts."); *Patrickson v. Dole Food Co., Inc.*, 368 P.3d 959, 960 (Haw. 2015) ("We hold that the filing of a putative class action in another

---

[29] In *Adedje v. Westat, Inc.*, 214 Md. App. 1 (2013), the Court of Special Appeals considered the issue and declined to apply cross-jurisdictional class action tolling to an employees' individual claim for overtime wages under the Maryland Wage Payment and Collection Law after she had participated in a class action case in federal court where her claim was dismissed. After discussing the split in authority in other states concerning adoption of cross-jurisdictional class action tolling, and acknowledging the lack of Maryland precedent addressing the issue, the intermediate appellate court declined to adopt it and held that the plaintiff's claims were barred by the statute of limitations. *Id.* at 31. We consider the Court of Special Appeals' holding in *Adedje* to be influenced in large part by the procedural history and the facts of that case—specifically, that appellant's later-filed state claims did not concern the same claims that had been raised in the federal case (and therefore, the employer was not on notice of the later filed claims), and also that the federal court had given the appellant the opportunity to continue her action by dismissing her claim with leave to amend, but "for reasons not apparent" to the court, she elected to file a new complaint in the Circuit Court for Montgomery County. *Id.* at 33.

jurisdiction does toll the statute of limitations in this state, as such 'cross-jurisdictional tolling' supports a primary purpose of class action litigation, which is to avoid a multiplicity of suits."); *Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 395 (Del. 2013) ("We are persuaded by the reasoning of other state supreme courts that have recognized the doctrine of cross jurisdictional class action tolling."); *Stevens v. Novartis Pharms. Corp.*, 247 P.3d 244, 253 (Mont. 2010) (adopting cross-jurisdictional tolling, but noting that a considerable number of jurisdictions have not squarely addressed the issue, and noting that the "outlines [of the doctrine] are still in the process of developing[]").

Some states have refused to adopt cross-jurisdictional tolling. *See, e.g.*, *Casey v. Merck & Co., Inc.*, 722 S.E.2d 842 (Va. 2012); *Maestas v. Sofamor Danek Grp., Inc.*, 33 S.W.3d 805 (Tenn. 2000); *Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1104 (Ill. 1998). Although their reasons vary, most of the jurisdictions that have refused to adopt cross-jurisdictional class action tolling have done so based upon concerns over judicial economy. *See, e.g.*, *Portwood*, 701 N.E.2d at 1104 (stating that "[u]nless all states simultaneously adopt the rule of cross-jurisdictional class action tolling, any state which independently does so will invite into its courts a disproportionate share of suits which the federal courts have refused to certify as class actions after the statute of limitations has run[]"). Other states, such as Virginia, have declined to judicially expand exceptions to statutes of limitations because the limitations are based upon statutes. *See Casey*, 722 S.E.2d at 845 (observing that under Virginia law, "[a] statute of limitations may not be tolled, or an exception applied, in the absence of a clear statutory enactment to such effect. . . . Given these principles, there is no authority in Virginia jurisprudence for the equitable tolling of

60

a statute of limitations based upon the pendency of a putative class action in another jurisdiction.") (internal quotations and citations omitted).

Applying the *Bertonazzi* factors, we determine that adopting cross-jurisdictional class action tolling is consistent with our Maryland tolling jurisprudence. Specifically, we conclude that the same principles that support intra-jurisdictional class action tolling also support cross-jurisdictional class action tolling. As noted in Part IV.E.2., *supra*, the class action certification process promotes judicial economy and efficiency. Permitting the tolling of potential individual claims of a putative class member during the pendency of the class action promotes these objectives. Tolling negates any need that a putative class member would have to file individual claims during the pendency of the putative class action suit. Our sister states that have adopted cross-jurisdictional class action tolling have relied upon the same principles. *See Vaccariello v. Smith & Nephew Richards, Inc.*, 763 N.E.2d 160, 163 (Ohio 2002) (observing that cross-jurisdictional class action tolling would simply prevent Ohio plaintiffs from filing protective claims in Ohio courts during the pendency of a putative class action in federal court); *Blanco*, 67 A.3d at 397 (The Delaware Supreme Court observing that, "[i]f we do not recognize cross-jurisdictional tolling, putative class members will still be incentivized to file placeholder actions in Delaware to protect their interests in the event that the putative class is not certified[]").

Once the trial court, in any jurisdiction, determines that the case cannot proceed as a class, the putative members should be permitted to file their individual claims without regard to whether the class action was pending in a Maryland state court, federal court, or another jurisdiction. Like our sister states who have adopted cross-jurisdictional class

61

action tolling, we see no sound reason to limit the application of *American Pipe* class action tolling only to class action cases pending in our state courts. *See, e.g.*, *Stevens*, 247 P.3d at 256 (Montana Supreme Court stating that "[w]e see no reason why jurisdictional boundaries should operate as a bar to the application of [class action tolling]").

In conclusion, we hold that Maryland recognizes *American Pipe* class action tolling for absent members of putative class actions filed in other state and federal courts. We further hold that the same factors that we articulated in *Christensen* for intra-jurisdictional tolling also apply to cross-jurisdictional class action tolling. Specifically, in order for the plaintiff to claim the benefit of class action tolling in a later-filed individual claim, the plaintiff must show that the class action complaint: (1) "notified the defendants of not only . . . the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs[;]" and (2) "the individual suit must concern the same evidence, memories, and witnesses as the subject matter of the original class suit[.]" *Christensen*, 394 Md. at 255–56 (internal quotations omitted).

And because all things must come to an end, we must determine when the tolling concludes. We agree with the rationale expressed by our sister Court of Appeals in New York that: "Because recognition of cross-jurisdictional tolling implicates our statutes of limitations, a bright-line rule is necessary to provide clarity to all parties in understanding their rights and obligations and . . . to balance the interests of *both* plaintiffs and defendants." *Bermudez Chavez*, 158 N.E.3d 93, 104 (emphasis in original). We therefore hold that tolling ends when there is a clear dismissal of a putative class action, including a dismissal for *forum non conveniens*, or a denial of class action for any reason.

62

Applying these principles to Mr. Cain's individual claims, we determine that the three-year statute of limitations was tolled from the filing of the *Johnson* case on September 10, 2009 until March 10, 2011—the date that the federal district court approved the settlement of the limited class and entered an order dismissing the claims that were not part of the settlement. Mr. Cain's individual claims were tolled during the pendency of the *Johnson* action, or for 546 days. The circuit court determined that Mr. Cain's claim started to accrue when Midland received its first payment on the judgment on September 25, 2009. Mr. Cain filed the present action 1,404 days later—on July 30, 2013—which is beyond the three-year statute of limitations. However, if the three-year statute is tolled during the pendency of the *Johnson* action for a period of 546 days, Mr. Cain's individual claims are not barred by the three-year limitations period (1,404 days – 546 days = 858 days). Applying cross-jurisdictional tolling to Mr. Cain's individual claims, we determine that the claims were timely filed.

### F. *Given Our Holding on Cross-Jurisdictional Class Action Tolling, We Do Not Determine Whether 28 U.S.C. § 1367(d) Applies in the Context of the Dismissal of a Class Action Certification*

Finally, Mr. Cain argues that under 28 U.S.C. § 1367(d), the Supreme Court's decision in *Artis v. District of Columbia*, ____ U.S. ____, 138 S. Ct. 594 (2018) and Maryland Rule 2-101, his limitations period was tolled during the pendency of the *Johnson* action plus 30 days for his putative class action. In *Turner v. Kight*, 406 Md. 167 (2008), we discussed the legislative history and our interpretation of the supplemental jurisdiction statute, 28 U.S.C. § 1367. Our interpretation was recently confirmed in *Artis*. The statute "enables federal district courts to entertain claims not otherwise within their adjudicatory

63

authority when those claims are so related to claims within federal-court competence that they form part of the same case or controversy." *Artis*, 138 S. Ct. at 597 (cleaned up) (citing § 1367(a)). Section 1367(d) provides:

> The period of limitations for any claim asserted under subsection (a),[30] and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

Although the federal supplemental jurisdiction statute includes "claims that involve the joinder or intervention of additional parties[]", *see* § 1367(a), it is silent as to its application to putative class action claims. Given our holding that Maryland recognizes cross-jurisdictional class action tolling, we do not need to determine whether the federal supplemental jurisdiction statute, § 1367(d), applies to later filed individual claims after a non-merits dismissal of class action certification.[31]

---

[30] Section 1367(a) states:

> Except as provided in subsections (b) and (c) or as expressly provided by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

[31] *Artis v. District of Columbia*, ___ U.S. ____, 138 S. Ct. 594 (2018) does not address the applicability of the supplemental jurisdiction statute to a non-merits dismissal of class action certification. *Artis* involved individual claims filed in federal district court alleging violations of federal law and state law. After the federal district court dismissed the plaintiff's sole federal claim, the court declined to exercise supplemental jurisdiction over a state law claim. The plaintiff then filed the state law claim in D.C. Superior Court. The Supreme Court accepted *certiorari* to "resolve the division of opinion among State Supreme Courts on the proper construction of § 1367(d)"—namely whether the word

64

## G. The Finality of the Circuit Court Judgment

In his last argument, Mr. Cain alleges that the Court of Special Appeals did not have jurisdiction to review the circuit court's decision because the September 21 opinion and order and the associated declaratory judgment (the "September 21 orders") did not constitute a "final judgment." A "judgment" is defined under Maryland Rule 1-202(o) as an "order of court final in nature entered pursuant to these rules." A judgment is "rendered" when a court has "clearly indicate[d] that the issue submitted has been adjudicated completely and it has reached a final decision on the matter." *Hiob v. Progressive Am. Ins. Co.*, 440 Md. 466, 485 (2014) (citation and quotation marks omitted). The circuit court in this case rendered a final judgment on September 21, 2017. The orders issued on that date disposed of Midland's motion to dismiss and granted Mr. Cain's motion for summary judgment—constituting an unqualified decision as to *all claims* in Mr. Cain's complaint. As of September 21, 2017, there were no issues remaining between Mr. Cain and Midland for adjudication and Mr. Cain had no active complaint that could be amended. We conclude that the September 21 orders were an unqualified final disposition of all claims

---

"tolled" means the state limitations period is suspended entirely during the pendency of a federal suit or whether the limitations period continues to run, but a plaintiff has 30 days to refile in state court if the federal case is dismissed. *Artis*, 138 S. Ct. at 601. The Supreme Court determined that the former reading was most appropriate, and held that if a plaintiff files a mix of federal and state claims in federal court and that court dismisses the state law claims, § 1367(d) suspends the statute of limitations for bringing those claims in state court for the period that federal case was pending plus 30 days. *Id.* at 608. The Court's holding in *Artis* has no application here as that case did not involve a non-merits dismissal of class certification.

in the complaint and had the effect of putting Mr. Cain—the only named plaintiff at that time—out of court.[32]

We similarly reject Mr. Cain's assertion that the September 21 orders did not constitute a final judgment because this lawsuit was filed as a putative class action, and motions for class certification and to compel discovery were outstanding. As the Court of Special Appeals observed in *Murray v. Midland Funding, LLC*, 233 Md. App. at 264 n.7, Maryland Rule 2-231(c) "states the hearing [on a motion for class certification] must be held *soon*, but it does not say the hearing must be held *before* a ruling on a motion to dismiss." (Emphasis in original). Federal courts that have interpreted Federal Rule 23(c)— the federal counterpart to Maryland Rule 2-231—have similarly held that a trial court is

---

[32] We reject Mr. Cain's argument that the September 21 orders lack finality because Ms. Murray's claims were pending. The trial court specifically noted that Ms. Murray's claims were not addressed by the Court because "she was not a party" until she filed an Amended Complaint on September 21—the same day that the court issued its final orders. The trial court also pointed out that Mr. Cain moved for summary judgment prior to the belated attempt to add Ms. Murray to the case and that Mr. Cain's counsel did not argue (or even mention) Ms. Murray at the September 13 hearing. The trial court also pointed out that, not only did the court not have the opportunity to opine on "Ms. Murray's hypothetical claims," the court was *not aware such clams existed until after* the final orders were issued. Based upon this record, we determine that the September 21 orders fully adjudicated and disposed of all of Mr. Cain's claims—the only claims then pending before the court—and therefore, the orders constituted a final judgment, thereby precluding Mr. Cain from amending the complaint. *See* Md. Rule 2-322(c) (if a court dismisses a complaint for failure to state a claim, "an amended complaint may be filed only if the court expressly grants leave to amend"); *Davis v. DiPino*, 337 Md. 642, 648–49 (1995) (a circuit court has "no . . . discretionary authority to permit the amendment of the complaint subsequent to the grant of summary judgment"). Moreover, Mr. Cain clearly believed that the September 21 orders constituted a final judgment because he filed a motion to alter or amend the judgment pursuant to Md. Rule 2-534—a procedure that applies only after a final judgment disposing of all issues is rendered. To the extent that Ms. Murray's individual claims are not barred by the applicable statute of limitations, she is free to file a complaint consistent with the holdings expressed herein.

66

not required to resolve a plaintiff's class certification motion before ruling on a dispositive challenge to the class representative's claims. *See, e.g.*, *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1289 (11th Cir. 2001). Similarly, we are not aware of any authority to support the notion that an outstanding discovery motion can prevent a dispositive ruling from becoming a final, appealable judgment.

## V.

### Conclusion

For the reasons set forth in this opinion, we hold as follows:

(A)  Petitioners' claims for unjust enrichment and statutory claims for money damages are subject to the three-year statute of limitations established by CJ § 5-101.

(B)  The statute of limitations governing specialties actions "on a judgment" established under CJ § 5-102(a)(3) applies to actions to *enforce* a judgment and has no application here.

(C)  We decline to apply the continuing harm theory to extend the accrual date for Petitioners' claims.

(D)  We decline to expand the *American Pipe* class action tolling rule to successive class action cases.

(E)  Maryland recognizes the *American Pipe* class action tolling rule for absent members of putative class actions filed in other state and federal courts. The same factors that we articulated in *Christensen* for intra-jurisdictional tolling also apply to cross-jurisdictional class action tolling. Specifically, in order for the plaintiff to claim the benefit of class action tolling in a later-filed individual claim, the plaintiff must show that the class

67

action complaint: (1) notified the defendants of not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs; and (2) the individual suit must concern the same evidence, memories, and witnesses as the subject matter of the original class suit.

(F) Cross-jurisdictional class action tolling ends when there is a clear dismissal of a putative class action, including a dismissal for *forum non conveniens*, or a denial of class action for any reason.

(G) Applying the *American Pipe* class action tolling rule to Mr. Cain's individual claims, we determine that the claims were timely filed.

(H) A final, appealable judgment was entered in Mr. Cain's case and that the Court of Special Appeals had jurisdiction to consider the appeal.

We, therefore, affirm the decision of the Court of Special Appeals in part, and reverse it in part, in the case of *Cain.* We affirm the decision of the Court of Special Appeals in the case of *Gambrell* in its entirety.

**IN CASE NO. 38, JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH FURTHER INSTRUCTIONS TO DISMISS THE PUTATIVE CLASS ACTION CLAIMS, AND FOR FURTHER PROCEEDINGS ON MR. CAIN'S INDIVIDUAL CLAIMS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT TO BE PAID BY RESPONDENT.**

**IN CASE NO. 39, JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT TO BE PAID BY PETITIONER.**

Circuit Court for Baltimore City
Case No.: 24-C-13-004869

Circuit Court for Anne Arundel County
Case No.: C-02-CV-15-002988

Argued: March 4, 2021

IN THE COURT OF APPEALS

OF MARYLAND

Nos. 38 & 39

September Term, 2020

CLIFFORD CAIN, et al.

v.

MIDLAND FUNDING, LLC

TASHA GAMBRELL

v.

MIDLAND FUNDING, LLC

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

Opinion by McDonald, J.,
dissenting in part.

Filed: August 4, 2021

The Majority Opinion is well-researched, well-written, and, in many respects, an important contribution to our case law. However, I disagree with its treatment of a key element of the limitations issue – when and how a cause of action accrues.

*Limitations and Accrual*

Any limitations rule can be divided into three parts: (1) the time at which it begins to run, usually referred to as the time of accrual of the cause of action; (2) a duration, generally set by statute (the "statute of limitations"); and (3) any applicable tolling principle, common law or statutory, that either stops the clock or extends the duration in some way.[1]

My disagreement with the Majority Opinion on the limitations issue in these cases relates to the first element – accrual. Accrual is often the critical element in deciding whether limitations has run. The continuing harm doctrine – which might more appropriately be labeled the continuing accrual doctrine – plays an important role in situations in which a defendant's wrongdoing consists of discrete actions over a period of time that result in the damages or other harm suffered by the plaintiff.

Different theories abound as to how to define accrual of a cause of action: "Some courts have held the cause of action accrues when the defendant commits his wrong, others when the plaintiff discovers the wrong, and still others have held that it does not accrue until the maturation of harm." *Mattingly v. Hopkins*, 254 Md. 88, 92-93 (1969).

---

[1] *See, e.g.*, *Swam v. Upper Chesapeake Medical Center*, 397 Md. 528 (2007) (judicial tolling of limitations on plaintiff's claim in light of statutory "ambiguity regarding the appropriate forum"); Maryland Code, Courts & Judicial Proceedings Article, §5-205 (tolling related to defendant's absence from State).

The Majority Opinion applies a discovery rule.  The continuing harm doctrine relates accrual to the maturation of harm.

*The Majority Opinion's Theory of Accrual*

In the *Gambrell* case, the date of accrual was identified by the circuit court as the date when Midland "filed the collection action" against Ms. Gambrell – on the theory that she was constructively on notice as to its unlicensed status.[2]  Majority slip op. at 23, 26-27.  In the *Cain* case, the date of accrual was identified by the circuit court as the date when "Midland received its first payment on the judgment" against Mr. Cain – a very different start date for limitations that is well after Midland's filing of the complaint.  Majority slip op. at 26.  The Majority opts for the date chosen by the circuit court in *Cain*.  It states that their claims accrued "at the latest" at the time that Midland received its first payment – on the theory that plaintiffs should have been aware of the judgments against them at that time and could have learned of Midland's unlicensed status if they had checked an agency website.  Majority slip op. at 27 & n.18.  This is an application of a discovery rule that does not take into account later discrete acts of Midland that caused the harm.

*Is the Majority Opinion's Theory Consistent with* Finch III*?*

In any event, neither theory of accrual set out in the Majority Opinion appears to be consistent with this Court's decision in *Finch III*.  *LVNV Funding LLC v. Finch*, 463

---

[2] This conception of accrual is puzzling.  Even if Ms. Gambrell could be charged with somehow knowing that Midland was not listed as a licensee on a relatively obscure agency website, she presumably was not aware that Midland had filed a complaint against her until she was served with it.

2

Md. 586 (2019). In that case, the Court held that judgments obtained by the unlicensed debt collector were not void. However, the debt collector could be barred by injunction from taking "any action" to enforce those judgments. 463 Md. at 612. Moreover, the debt collector could be held liable for damages relating to any collection efforts, pursuant to MCDCA[3] and MCALA[4] – two of the statutes on which the cases before us are also based. *Id*. Such collection efforts occur through discrete acts, such as applications for writs of garnishment based on such a judgment. The Court remanded the case in *Finch III* for further proceedings in the circuit court to compute damages incurred by the plaintiffs as a result of the debt collector's collection efforts. *Id.*

In light of that holding in *Finch III*, it makes no sense to say that all such violations are complete and all such claims accrue when the original debt collection action was filed or when the debt collector first succeeded in obtaining payment on the judgment. Any such theory potentially gives the debt collector advance immunity from the liability recognized in *Finch III* for later discrete efforts to enforce such a judgment.

*The Continuing Harm Doctrine*

The Majority Opinion asserts that no one raised the issue of accrual in these appeals. Majority slip op. at 26, 27. But the concept of accrual is inherent in the continuing harm doctrine that the Petitioners argued on appeal and is clearly articulated

---

[3] Maryland Consumer Debt Collection Act ("MCDCA"), Maryland Code, Commercial Law Article, §14-201 *et seq*.

[4] Maryland Collection Agency Licensing Act ("MCALA"), Maryland Code, Business Regulation Article §7-101 *et seq*.

in their brief. For example, they argue that the failure to apply the continuing harm doctrine in these circumstances effectively requires plaintiffs to file a complaint before "all the elements of their claims ha[ve] accrued." Petitioners' Brief at 31.

The continuing harm doctrine is appropriately applied when a defendant's wrongdoing consists of discrete acts that are part of an overall scheme that causes harm to another. In *Mattingly*, the Court noted that, under the "continuation of events theory" (*i.e.*, a continuing harm theory), "only the last [event] starts the running of the statute [of limitations]." 254 Md. at 94. *See also Muffoletto v. Towers*, 244 Md. App. 510, 528, *cert. denied*, 469 Md. 276 (2020) ("the continuing harm doctrine rests on a new affirmative act"). It is a cousin to similar doctrines in other areas of the law. For example, in the criminal law context, it is well understood that the statute of limitations for a conspiracy charge "runs from the last overt act during the existence of the conspiracy," not the first. *Fiswick v. United States*, 329 U.S. 211, 216 (1946).

The Majority Opinion acknowledges that the continuing harm doctrine relates to accrual, but believes that the doctrine applies only "in limited contexts." Majority slip op. at 41, 44. Midland asserts that the doctrine applies only to nuisance and trespass cases, and the Majority Opinion seemingly takes little issue with that characterization of the law. Majority slip op. at 40-41 (stating that continuing harm doctrine "is applied in nuisance, trespass, and other tort cases"). There is no obvious reason to limit the doctrine to such claims. Further, a review of this Court's case law demonstrates that this Court has not done so to date. For example, in *Shell Oil Co. v. Parker*, 265 Md. 631, 636 (1972), this Court applied the continuing harm doctrine in holding that plaintiffs' fraud claim

4

against the defendant was not barred by limitations. No claim of nuisance or trespass was made in that case. *See also Duke Street Limited Partnership v. Board of County Commissioners*, 112 Md. App. 37, 50 (1996) (recognizing that continuing harm doctrine can apply to civil rights claims, claims of unconstitutional takings, and nuisance claims, although it did not apply the doctrine in the case before the court).

The Court's two most recent considerations of the continuing harm doctrine are instructive. In *MacBride v. Pishvaian*, 402 Md. 572 (2007), a jury awarded a tenant $100,000 in damages against a landlord for the landlord's unfair and deceptive trade practices, but the circuit court entered judgment notwithstanding the verdict in favor of the landlord on the ground that the claim was barred by limitations. The tenant appealed, asserting, among other things, that the action was timely under the continuing harm theory of accrual.

Although the Court ultimately ruled for the landlord, the Court considered application of the continuing harm doctrine to the claim in that case. The Court noted that the continuing harm doctrine applied when "there are ongoing violations of a potential plaintiff's rights." 402 Md. at 575-76 n.2. The claim of unfair and deceptive trade practices was based upon "misstatements made directly to a consumer, or by advertisement, or phone solicitation concerning the quality and availability of goods or services…." *Id*. at 585 (internal quotation marks and punctuation omitted). In the case before it, the jury had not only returned a general verdict in favor of the plaintiff, but had also returned a special verdict in which it found that the plaintiff was aware of the landlord's unfair and deceptive trade practices on a date six years before suit was filed.

5

As the only misstatements found by the jury had occurred six years before the suit was filed, the grant of JNOV was affirmed. *Id.* at 585-86.

Thus, in *MacBride*, the Court recognized that the continuing harm doctrine *could* apply to a landlord-tenant claim under the Consumer Protection Act, but held that the essence of the claim in that case was the alleged misrepresentation by the landlord and incorporated a discovery rule in its analysis to find the claim untimely.

Subsequently, in *Litz v. Maryland Department of the Environment*, 434 Md. 623 (2013), this Court observed that the *MacBride* decision had improperly limited the continuing harm doctrine on the ground that the plaintiff had become aware of a continuing violation at an early date. Disavowing that part of the *MacBride* opinion, the Court explained: "The purpose of the continuing harm doctrine is to avoid punishing a plaintiff because one or more violations occurred earlier in time when such violations are continuing in nature. A potential plaintiff's knowledge of the harm, therefore, is inconsequential." 434 Md. at 647-48 n.9 (citations, internal quotations and punctuation deleted).[5] In *Litz*, the Court held that the continuing harm doctrine saved the plaintiff's negligence and trespass claims from dismissal on limitations grounds. *Id*. at 645-50. Nothing in the Court's opinion limited that doctrine to negligence and trespass claims – or any other cause of action – so long as the violation was continuing or ongoing in

---

[5] Midland and the Majority Opinion rely precisely on the notion that this Court rejected in *Litz*. *See* Majority slip op. at 27 (relating its holding on accrual to the date that Mr. Cain and Ms. Gambrell "were clearly on notice of the judgment" and could have known of Midland's unlicensed status).

6

nature.[6] Moreover, whether the plaintiff knew – or should have known – of an early event in an ongoing series of events causing the harm did not matter.

*Conclusion*

In the two cases before us, the alleged wrongful conduct of Midland was continuing and consisted of a series of discrete acts to obtain judgments against Mr. Cain and Ms. Gambrell in violation of MCALA and MCDCA and then to enforce those judgments through subsequent collection activity. There is no question that these discrete acts were related and part of an ongoing effort to collect on actions brought in violation of several State statutes. The Majority Opinion essentially holds that one of the earliest of those actions (that resulted in a "first payment"), coupled with imputed knowledge of Midland's unlicensed status, was the date of accrual of any cause of action Mr. Cain and Ms. Gambrell had for all the later discrete actions by Midland to collect on those judgments. For the reasons explained above, this narrow view of the accrual of these claims is inconsistent with our case law under the continuing harm doctrine.

---

[6] In *Walton v. Network Solutions*, 221 Md. App. 656, 676-77 (2015), the Court of Special Appeals suggested that the holding in *Litz* might be so limited. However, the *Litz* opinion itself does not state such a limitation and in fact applied the continuing harm doctrine in computing the period of limitations applicable to a negligence claim. Moreover, the *Walton* court explicitly left open the possibility that reliance on a second later incident between the plaintiff and one of the defendant's employees, apparently not preserved for the appeal, would have made the plaintiff's claim timely. 221 Md. App. 675 n.3.

7

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/38a20cn.pdf